VICKSBURG BANK *v.* WIRT ADAMS, STATE REVENUE AGENT.

74  179
78  113

1. TAXATION.  *Assessment.  Misdescription.  Parol evidence.  Collateral
   attack.*

   In the absence of fraud, a misdescription in a perfected and approved
   assessment cannot, in a collateral attack, be shown by parol.

2. SAME.  *Incomplete, etc.  Direct attack.*

   Misdescription may be so shown if the assessment be incomplete and
   is undergoing direct adjudication.

3. SAME.  *Banks.  Privilege tax.  Laws 1888, pp. 15, 16.*

   Under the act of 1888 (Laws pp. 15, 16), the payment of a proper
   privilege tax exempted a bank from *ad valorem* taxes.

4. SAME.  *Lists rendered by taxpayers.  List made by assessor.*

   The assessment is the list made by the assessor, and it is not consti-
   tuted of the lists rendered him by the taxpayers.

5. SAME.  *Judgments on appeals from assessments.  Damages.  Code 1892,
   § 4360.*

   A judgment determining the liability of property to taxation and
   fixing its value, is not, on appeal to the supreme court, within
   § 4360, code 1892, imposing damages.

FROM the circuit court of Warren county.

HON. W. K. McLAURIN, Judge.

This suit had its origin in the effort of the state revenue agent to collect from the bank taxes due to the city of Vicksburg for the years 1886, 1887, 1888, and 1889, and which he claimed the bank had wrongfully escaped. Section 3, of chapter 34, laws of 1894, p. 29, under which the revenue agent acted, is in the following words, viz.: "After the expiration of the fiscal year in which taxes become due, should the revenue agent discover that any person, corporation, property, business, occupation, or calling has escaped taxation by reason of not being assessed, it shall be his duty to give notice to the tax collector in writing, and the collector shall, within ten days thereafter, make the proper assessment by way of an additional assessment on the roll or tax list in his hands, and give ten days' notice, in writing, to the person or corporation whose property is assessed, and all objections to such assessments shall be heard at the next meeting of the board of supervisors of counties, or board of mayor and aldermen of municipalities. The board of supervisors or mayor and aldermen shall also be notified in writing by the collector of said assessment, and the state revenue agent may appear at said meeting, and an appeal to the circuit court may be taken from the order of the board approving or disapproving such assessment by either party. If the assessment be approved, and no appeal be taken, and the taxes shall not be paid within thirty days thereafter, the property, if it be real estate, shall be ordered sold as provided by § 3850 of the annotated code of Mississippi, and if it be personalty, the tax collector shall proceed to collect by distress or otherwise. If the tax collector shall fail or refuse to make an assessment and report the same as herein required, he shall be liable on his bond for the amount of taxes properly collectible and ten per cent. damages thereon. If the assessment rolls be in the hands of the assessor at the time the revenue agent makes discovery of property which has escaped taxation,

he shall give the required notice to the assessor, who shall make the proper assessment and give the required notices to the owner of the property and to the board of supervisors or mayor and aldermen, under like penalties for failure as provided against the collector, and like proceedings shall be had. When any taxes shall be collected under assessments made as herein required, the revenue agent shall receive therefor, at the time of collection, the same compensation allowed him by law for other collections.'' Acting upon this statute, the state revenue agent gave the following notice to the city tax assessor and collector (the same person held both offices), viz.:

"NOTICE TO ASSESS.

"*To the Assessor and Collector of the City of Vicksburg, Miss.:*

'' You will take notice, and you are hereby notified, that the following described property in your said county, to wit: Vicksburg Bank, belonging to and owned by E. S. Butts, president, and H. C. Kuykendall, vice president, *et al.*, has escaped taxation during the years of 1886, 1887, 1888, 1889, by reason of its not being assessed.

'' You are, by virtue of an act of the legislature of the state of Mississippi, approved February 7, 1894, entitled 'An act to provide for the election of a state revenue agent, to prescribe his powers and duties, and to repeal §§ 4187, 4190, 4192, 4193, and 4195, ch. 126, annotated code of Mississippi,' now notified and required to, within ten days hereafter, make the proper assessment of said property by way of an additional assessment on the roll or tax list in your hands, and to give ten days' notice, in writing, to said E. S. Butts, president, *et al.*, whose property is so assessed, and also notify, in writing, the mayor and board of aldermen of the city of Vicksburg of said assessment.

'' Herein fail not, under penalties imposed by said act.

'' Witness my signature, this nineteenth day of May, 1894.

'' WIRT ADAMS, *State Revenue Agent.*''

74 Miss.—12c

In pursuance of this notice, the city assessor and tax collector made the following assessment, viz.:

PERSONAL.

ADDITIONAL ASSESSMENT AS PER NOTICE OF WIRT ADAMS, REVENUE AGENT OF THE STATE OF MISSISSIPPI, FILED WITH ME MAY 19, 1894. SAID NOTICE HERETO ATTACHED ON OPPOSITE SIDE OF BOOK.

| No. | NAME OF PERSON, CORPORATION, SOCIETIES, PARTNERSHIPS OR FIRMS TAXED. | Buildings and Improvements Separate from Lands. | Clocks, Watches, Jewelry, etc. | Gold and Silver Plate. | Wares and Merchandise. | Horses, Mules, Cattle, Sheep, and Hogs. | Vehicles of all Kinds. | Stocks or Bonds other than U. S. |
|---|---|---|---|---|---|---|---|---|
| | Vicksburg Bank for 1886 | | | | | $75,000 | | |
| | Vicksburg Bank for 1887 | | | | | 75,000 | | |
| | Vicksburg Bank for 1888 | | | | | 75,000 | | |
| | Vicksburg Bank for 1889 | | | | | 75,000 | | |

And gave proper notices thereof, under the statute.

The matter was thus brought before the municipal authorities of the city of Vicksburg, where the bank objected to the additional assessment, specifying the following objections:

1. Said assessment was not made in a legal manner or by a person authorized by law to make it.

2. Said bank is not subject to be so assessed, or assessed at all, for any one or more of said years.

3. Said property has not escaped assessment or taxation for said years, is not liable to be assessed now, is not in existence, the money was not out at interest, the property was not loaned money, the valuation is excessive.

4. The law under which said assessment was made is unconstitutional and void. Acts of 1894, p. 29.

5. Said assessment is the act of the state revenue agent, and not the constitutional assessor.

6. Said assessment was made under and by virtue of the order and directions of the state revenue agent, and not by the assessor and tax collector voluntarily, as his official act within and from a sense of official duty, but under fear and threats produced and made by said revenue agent, that he would be

harassed by suits on his official bond if he refused; and did so also to avoid a possible liability on his said bond if he failed to obey the said orders of said state revenue agent; and said assessment was made without any knowledge on the part of the collector or assessor as to the facts on which it is based. Said revenue agent had no authority to give such notice to the assessor and collector before the end of the present fiscal year.

7. The passage of the act providing for the election of the state revenue agent (Acts of 1894, p. 29), was not in accordance with § 71 of the constitution of Mississippi, so far as it provides for the present incumbent holding said office, and so far as it provides for assessments to be made as therein enacted.

8. Said bank was assessed for the years 1886, 1887, on February 15, 1894, by said assessor and collector before notice from said revenue agent for him to so assess on said capital stock, and such assessment has been or will be returned with the general assessment of property for the year 1894 by said assessor and collector, and said bank paid the privilege tax, as provided for by law, for the years 1888 and 1889 in lieu of all the taxes.

9. The said notices are insufficient in law.

10. Said bank objects to said assessment as wholly unwarranted by the law or the facts, and upon other grounds, to be stated on the hearing.

The matter was heard by the municipal authorities, and the additional assessment was disapproved, and the state revenue agent appealed to the circuit court.

The defenses made in the circuit court by the bank were, that for the years 1886 and 1887 it had paid a privilege tax, and it had been assessed upon its capital stock and paid its taxes thereon before action by the revenue agent. The assessment shown for said years, and which the bank offered to introduce in evidence, was also an additional assessment, and it was made in 1894, and was as follows:

Statement of the case.

### PERSONAL ROLL.

| NAME OF PERSON, CORPORATION, SOCIETY, PARTNERSHIP OR FIRM TAXED. | Buildings and Improvements Separate from Lands. | Clocks, Watches, Jewelry, etc. | Gold and Silver Plate. | Wares and Merchandise. | Horses, Mules, Cattle, Sheep, and Hogs. | Vehicles of all Kinds. | Stocks or Bonds other than U. S. | Moneys on Hand, on Deposit or at Interest. | Notes, Bills, Obligations, etc. | Household Furniture Exceeding $250. | Pianos, Melodeons, and Organs. | Miscellaneous. | Total of Personality. | Amount of Tax. | Remarks. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bank of Vicksburg for 1886 | ---- | ---- | ---- | ---- | ---- | ---- | ---- | $10,000 | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| Bank of Vicksburg for 1887 | ---- | ---- | ---- | ---- | ---- | ---- | ---- | 10,000 | ---- | ---- | ---- | ---- | ---- | ---- | ---- |

This assessment had been duly approved by the proper authority. The bank offered to show, by parol, in connection with said roll, that the $10,000 upon said assessment for said years, 1886 and 1887, was not, as shown by the roll, "money on hand, on deposit or at interest," but was its capital stock, and that it had paid its taxes on said assessment. The court below excluded this evidence, but permitted the revenue agent to show that the $75,000 on the assessment, the correctness of which was the subject of litigation, was capital stock, and not "horses, etc."

The defense for the years 1888 and 1889 was, that the bank had paid a privilege tax for said years, under the act approved March 8, 1888 (Laws, pp. 15, 16). Under this act, the privilege tax exempted the bank from *ad valorem* taxes, but there was no such exemption in 1886 and 1887.

The verdict of the jury in the circuit court was in favor of the plaintiff, Adams, revenue agent, for the years 1886 and 1887, fixing the amount of the assessment for each of said years at $60,000, and for the bank for the years 1888 and 1889, and judgment was entered accordingly. Both parties appealed.

*Dabney & McCabe,* for appellant bank.

The points which we rely on, and ask to be specially considered, are: 1. The assessment sought to be enforced is void. 2. The assessment given in by the Vicksburg Bank, on February 15, 1894, should have been admitted in evidence.

The notice from the revenue agent to the assessor does not describe any property. Neither does the assessment made under that notice describe any property. The notice describes " Vicksburg Bank" as the property to be assessed, not the owner of the property, but as the property itself. The law (Acts 1894, p. 29) requires a notice of what property has been discovered as a condition to an assessment made at the instance of the revenue agent. The assessment itself does not describe any property, but assesses the Vicksburg Bank as owner with $75,000, which is the valuation of no property described, unless it be "horses, mules, cattle," etc., at the head of the column, and there was no effort made on the trial to prove that the Vicksburg Bank owned any horses, mules, cattle, etc. The argument was that, inasmuch as by law a bank is subject to be taxed only on its capital stock, the inference would be drawn that this was intended to be assessed. What are and what is necessary in assessments? Listing or describing is necessary. See 25 Am. & Eng. Enc. L., 199, note 2.

This is a proceeding *in invitum,* and no authorities are needed to be cited to the point that to fix a liability upon a taxpayer, strict conformity to the law is required. Banks are liable to be taxed upon their real estate, yet this assessment does not inform this bank that the assessment is not intended to cover real estate. The argument that the law presumes the assessment to be upon capital stock, proves the error of the lower court in excluding the assessment given in by the bank· on February 15, 1894, because its figures were under the head lines of "money loaned at interest," etc. This assessment is void, for the further reason that the revenue agent was not authorized to give notice to the assessor to make an assessment

in this case, the property not having escaped taxation by reason of not being assessed. (Acts 1894, p. 29, § 3.) It will hardly be disputed that it was the duty of the city assessor to assess property subject to taxation, which had escaped taxation for former years. This court has held that a former act of the legislature requiring the revenue agent to make assessments, was unconstitutional, because it sought to supply the place and perform the functions of a constitutional officer; and the present act is sustained only because it does not do this, but simply requires the revenue agent to inform the assessor that he has discovered property which has escaped taxation. The assessor is then required to make the assessment. If he can make the assessment when this notice is brought to him in that way, he can certainly make it when he acquires information from other sources. In other words, it is the assessor who makes the assessment, and, if he can make it at all, it is his duty to make it whenever he discovers that the property has escaped taxation. There is no express provision, that we know of, for the assessment in the city, of property for taxation, which has escaped taxation in former years, and the act of 1894 does not confer any such authority. It seems to be assumed that the charters give this authority. The "assessor" referred to in the act seems to be the county assessor. Nothing in the act indicates that the assessor there referred to is the city "assessor and collector," and it is a mere inference that he was intended to be described. It is evidently the same assessor who is to give the notice to the board of supervisors and the board of mayor and aldermen, and it seems to us, possibly, a valid objection to this assessment, that the revenue agent gave notice to the city "assessor and collector" instead of to the county "assessor" in this matter.

At all events, it could not have been the policy or purpose of this act to authorize the state revenue agent to cause to be assessed property which had already been assessed by the city assessor, and which was then on his roll or in his hands for en-

tering. Indeed, nothing but abject fear on the part of this assessor induced him to undertake to make a second assessment when he had already officially performed his duty. If he could legally make an assessment when notified by the state revenue agent, it was his duty, and he could legally perform it without such notice. How can the assessor have in his hands at the same time two assessments against the same property? Shall the first be set aside in order to give the revenue agent a commission of twenty per cent. for giving notice to the assessor of a fact already known to him, and upon which he had officially acted—a fact which the revenue agent could have ascertained from the records in the hands of the assessor to whom he was giving the notice?

The assessment made under the revenue agent's notice was on the roll of 1893, a roll which had no further office or function to fill. The assessor could not legally have entered the assessment upon that roll. At that time, May, 1894, the roll was in the hands of the "assessor" as such, and not in the hands of the "collector," as held by this court in *Revenue Agent* v. *Brennan*, 72 M. R., 894. Hence it must have been the new or 1894 roll which should have been used.

We are at a loss to conjecture what the argument will be to sustain the action of the court in excluding the assessment returned by the assessor on the return given in by the Vicksburg Bank on February 15, 1894, upon the ground that the figures "10,000" were under the head line of "money loaned at interest," etc., when they are under obligation to make argument in support of the action of the court in admitting the revenue agent's assessment over defendant's objection when the figures "75,000" were under the head line of "horses, mules, cattle," etc. How is it possible to reconcile these two rulings? The head lines are printed on the pages for convenience and to save the trouble of writing out the names of things taxed. They do not become part of the assessment roll unless adopted as part. The principle that written instruments,

signed by the parties, cannot be qualified or altered by parol evidence, has no application here at all, and we assert with confidence that no law can be found sustaining a contrary contention. The general rule will be found in Greenl. Ev. (15th ed.), secs. 276–279; Rice Ev., vol. 1, sec. 157.

By sec. 279, *Ib.*, Greenl., it will be seen that it only applies to parties, and does not affect third persons, and they are allowed to prove the truth.

Treating this action as an adjudication by the board of mayor and aldermen, evidence would be admissible to show what was adjudicated. Wells Res Ad., sec. 297 *et seq.;* 1 Greenl. Ev., 279.

*Calhoon & Green,* for appellee, and cross appellant, Adams.

It is objected that the "notice" by the revenue agent does not describe any property. This was not necessary, because by sec. 3, act 1894, p. 29, it is provided that if the revenue agent shall discover that any person, corporation, property, business, occupation or calling has escaped taxation, it shall be his duty to give notice, etc. The "corporation"—bank—had escaped taxation; and the notice so informs the assessor and collector. Upon this, it was the duty of the assessor and collector to assess the bank. The only method known to the law of assessing banks for 1886 and 1887, and 1888 and 1889, was upon their capital stock. Hence, the notice, in the language of the law, was a notice to assess the capital stock of the bank.

In tracing the history of taxation in this state, it is discoverable that bank stock has not been taxed as such by name in the hands of the shareholder or owner, but was assessable to the bank. *Vicksburg Bank* v. *Worrell*, 67 Miss., 47; *State* v. *Simmons*, 70 Miss., 485; *Bank* v. *Oxford, Ib.*, 504.

When the "notice" and "assessment" were offered in evidence, the record shows only a general objection, except that "one ground of defendant's objection to the assessment was that the figures showing the amount of the assessment were in

a column with headlines showing "horses and mules" to be assessed, and not capital stock. Hence, this objection cannot be considered here. Objections to evidence must be specific and not general. "It is proper, in objecting to evidence, that the ground of the objection should be stated, as in that way only can parties be confined in this court to the same ground of objection which was taken in the court below." *Doe* v. *Natchez Ins. Co.*, 8 S. & M., 197, 208. Counsel argue that banks are liable to taxation on their real estate as well as upon their capital stock, and therefore that this assessment is uncertain. Banks, under § 498, code 1880, were not taxed on real estate. The only *ad valorem* tax a bank could owe, legally, was on its capital stock. This was pointedly illustrated in *Bank* v. *Oxford*, 70 Miss., 504. In that case there was no assessment whatever, and a bill was filed by the bank to enjoin an action at law by the city for back taxes. Upon a cross bill the right of the city to collect these taxes was upheld. If it had required an assessment of specific bank stock against the bank, then no such relief could have been granted. The relief was granted because § 498, code 1880, imposed *ad valorem* taxes on all the capital stock of the bank, and that was the only thing assessable against the bank.

It is objected that the assessment was under the headlines "horses and mules." An inspection of the record will demonstrate the absurdity of this contention. The whole additional assessment is written out on the page without any reference to the printed headlines, and the court below, on an inspection of the paper, admitted it in evidence. The statement of the witness that it had no reference to the headlines, was but cumulative evidence of what the paper itself showed, and its admission could possibly do no harm. Besides, if we treat the paper itself as doubtful evidence of what was intended, and apply the explanation to the doubt, it would be perfectly competent. This is unlike the pseudo assessment pretended to have been made, which put the $10,000 in the column of "money

loaned," etc., upon a regular assessment roll, without any suggestion of any doubt as to its proper place, and which could only be changed by a flat contradiction of the record.

Again, it is said that the county assessor was the proper party to make this municipal assessment. It is perfectly manifest that the "assessor" and "collector" of ch. 34, Acts 1894, are the county assessor and collector when applied to state and county affairs, and the city assessor and collector when applied to municipal affairs. The county assessor and collector never have the municipal rolls in their hands, and *vice versa*, and it is "on the roll or tax list in his hands" that the assessment is to be made.

The court did not err in excluding the pretended assessment made by Kiersky.

It will be noted that the revenue agent has been after this bank for years to collect these taxes. This court uniformly denied him the power to collect these taxes until the Act of 1894, approved February 7, 1894. Then, by some mysterious process of telepathy, the assessor and collector of Vicksburg, it would seem, awoke to the fact that this bank had escaped taxation for the years 1886 and 1887, and the assessment is recited to be demanded by the assessor, and on February 15, 1894, the bank, by affidavit of its president, returns an assessment under protest, denying all liability on the capital stock paid in, $75,000, and placing the market value of capital stock at $10,000. There is no offer to show that this pseudo return was delivered to the officer before adverse notice. The assessor was notified by Adams on May 19, 1894, to assess the Vicksburg Bank, and on May 21, 1894, the assessor notified the board that he had assessed the bank under Adams' notice. On June 21, 1894, before any return of the assessment roll of 1894 upon which the pseudo assessment appears, the board considered the Adams assessment, disallowed it, and Adams appealed. Afterwards, the assessor returned the regular roll of 1894 with an assessment in these words:

| | MONEY ON HAND, ON DEPOSIT OR AT INTEREST. |
|---|---|
| Vicksburg Bank for year 1886 | $10.000 00 |
| Vicksburg Bank for year 1887 | 10,000 00 |

And it was offered to be shown that the regular roll of 1894 containing this assessment was approved August 20, 1894. It thus appears that the pseudo assessment was not made until after the Adams assessment, and then it was made not in pursuance of the return of capital stock, but was on "moneys on hand, on deposit or at interest," and the assessment so made was approved by the board. The object of the effort to introduce this assessment on "moneys on hand, on deposit or at interest" in evidence was to bar this assessment by *res adjudicata.* When the record was produced, it showed that the assessment was not on capital stock, but on "moneys on hand," etc., and hence, that assessment was no bar to this one, as was decided in *State* v. *Simmons*, 70 Miss., 485. Counsel confuse the facts and principles applicable to the two assessments, when they contend that both are to be judged alike. The Adams assessment was being established in a direct proceeding for that purpose, and the assessment itself shows on its face that it had no reference to the headlines of the page. The pseudo assessment is introduced as a bar by matter of record, and, hence, it is unamendable in this proceeding. It must stand or fall by its own terms. It is not subject to collateral attack or explanation. The judgment of the board was invoked upon an assessment upon "money on deposit," etc., not upon capital stock. The assessor did not assess capital stock. There was a column on the roll for stocks or bonds, and yet the assessor assesses money on hand, etc. After the pseudo assessment passed into judgment final, by approval on August, 1894, its terms could be altered, if at all, only in a direct proceeding for that purpose, and then only upon the ground of fraud. *Redmond* v. *Banks*, 60 Miss., 293, 298; *State* v. *Simmons, supra; Griffin* v. *Levee Commrs.*, 71 Miss., 767. It could not be a

bar to a proper assessment of capital stock. If the judgment was erroneous in not describing the property really sought to be taxed, the remedy of the bank was by appeal to correct the judgment. As long as that judgment stands unreversed, it is conclusive that "money," etc., was assessed, and not "capital stock."

*On cross appeal.*

1. The court erred in refusing the peremptory instruction for Adams for 1886 and 1887, for the whole $75,000 assessed. There is no question but that the capital stock of the bank, at its market value, was taxable for 1886 and 1887, and that the capital stock paid in was $75,000 in 1878.

(1) It was assessed at $75,000. This assessment was *prima facie* correct, and the burden was upon the bank to disprove it. The person assessed must make his objections, and, of course, sustain them by proof, otherwise the assessment is approved, as of course.

(2) The conceded failure of the president and cashier to render the statement required by § 498, code 1880, made the whole capital named in the charter taxable, and the minimum amount of capital stock named in the charter was $75,000.

(3) It was admitted that the bank paid a privilege tax for 1886 and 1887 of $300, and this was the sum required of a bank "with capital stock or assets in excess of $100,000 and not more than $150,000." (Acts 1886, p. 19.)

The first instruction given for the bank is erroneous, because in an assessment, as here, by an officer, as part of his official duty, the presumptions of law and fact are in favor of and not against the record so made. The statute requires "objections" to be made, and these objections are tried, and not the assessment itself. Hence the instruction was wrong as to the burden of proof.

The second instruction so given is erroneous, because, first, the defendant had not paid all the taxes on $75,000 for the year 1888 by the payment of the privilege tax of $750. This

privilege tax was paid, as appears from the receipt, on June 1, 1888. The instruction recognizes the law to be that the *ad valorem* tax became a debt on February 1, 1888. Under the law in force on February 1, 1888, an *ad valorem* tax was due by the bank, as the privilege tax under act of 1886 was, in addition to *ad valorem* taxes. On March 8, 1888 (Acts 1888), the privilege tax thereby imposed was made in lieu of all other taxes on the amounts of capital stock and assets therein named. But the bank did not pretend to pay a privilege tax under this act until June 1, hence the *ad valorem* tax attached, and it was the duty of the president to make the return, on or before June 1, 1888, of the capital stock subject to taxation under § 498, code 1880. The failure to pay the privilege tax under the act of 1888, during the month of March, subjected the whole capital stock to taxation for that year. The bank could not, from February to June, be exempt from *ad valorem* taxation by subsequently, in June, paying a privilege tax; hence, by failing to pay the privilege tax in March, 1888—that is, within the month when it was imposed—the privilege tax did not secure to the bank immunity from *ad valorem* taxation. It is competent for the legislature to change the system of taxation, even though the new system results in forfeiture of benefits secured and paid for under the system repealed. *Attala County* v. *Kelly*, 68 Miss., 40. If the property exists on February 1, it becomes taxable against the then owner, and no change in its status, except under some statutory exemption, would relieve it of such taxes.

Argued orally by *M. Green*, for appellee.

Whitfield, J., delivered the opinion of the court.

It was not competent to show, by parol, that the $10,000 assessed to the bank on the assessment roll, as money loaned or on deposit, was capital stock, because this was a completed roll. It had passed by the conjoint action of the citizen and

the taxpayer into a completed record. The assessor had made his demand for the additional assessment. The bank had made its return. The assessor had entered the assessment formally on the assessment roll, and the bank had allowed the time within which it could have amended the misdescription (if it were one) to go by without pursuing the method for correction pointed out by the statute, and the board had approved the assessment. It is well settled by several decisions that in such case mere irregularities, such as misdescription, cannot be availed of by collateral attack, in the absence of fraud. It was competent to show by parol that $75,000 related to capital stock, and not to horses, etc., because that was not a completed assessment. The whole assessment was *in fieri*, and is now, in this suit, undergoing direct adjudication. In this last case it would seem that, without parol proof, a mere inspection of the face of the entry on the roll would disclose what is meant.

The bank had paid a sufficient privilege tax ($300) to protect it, so far as the privilege was concerned, from June 1, 1886, to June 1, 1887, and from June 1, 1887, to June 1, 1888, paying from June 1 to June 1; and so it paid a privilege tax of $750 from June 1, 1888, to June 1, 1890, for each of the two years. The fourth section of the act of March 8, 1888, provided that if a proper privilege tax had been paid before its passage, it should protect the privilege till the expiration of the license. This (taking $750 to be the proper amount, as found by the jury) protected the bank, so far as the privilege was concerned, for the years 1888 and 1889.

The return made by the bank to the auditor under the act of 1888, does not estop the bank from showing the truth. It, if incorrect, goes to the credibility of the officer making the return. It is a mode of ascertaining the assets of banks, but not the exclusive mode; and the act of 1888 changed the scheme of taxation, and exempted the bank, paying the proper privilege tax from *ad valorem* taxation. The case of *Sun Ins. Co.* v. *Searles*, 73 Miss., 62, has no application here. Penalty for

making a false return is provided.    We think the right result has been reached, and the judgment, both on the appeal and the cross appeal, is                                 *Affirmed.*

*Rehearing:* A reargument was granted in this case, on the application of the bank, and it was argued a second time by the same counsel who represented the respective parties when the cause was first submitted, *Dabney & McCabe,* for appellant, and *Calhoon & Green,* for appellee.

WHITFIELD, J., delivered the opinion of the court.

A careful re-examination of this record has only strengthened the view first announced.    It is perfectly manifest from the " assessment ordinance " that the list made by the assessor, and not the 10,000 fugitive lists returned by individual taxpayers, constitutes the assessment roll on which the board acts. Section 3 declares that the assessor and collector shall complete making his " list," etc., not " lists."    The singular is used, not the plural.    Section 4 provides that " the board of mayor and aldermen shall review and revise such list," not " lists." The singular, not the plural, is used.    Section 5 provides that " the board of mayor and aldermen will consider and pass on objections filed, and thereupon the assessor and collector shall make up his assessment rolls from the list so revised and passed upon," etc., the singular, not the plural—" list," not " lists " —being used.    The opinion and judgment heretofore rendered are adhered to.

*Motion to award damages.*

After the delivery of the above opinion, a motion was made by Adams, state revenue agent, to amend the judgment of the court so as to award five per centum damages, under § 4360, code 1892, against the bank.

*Calhoon & Green,* for the motion.

*Dabney & McCabe, contra.*

The following opinion was delivered on the motion:

WOODS, C. J., delivered the opinion of the court.

The judgment appealed from in this case to this court was simply one declaring the appellant bank properly assessable for taxes whose assessment and payment the bank had escaped for the years 1886 and 1887, and fixing the valuation of the property, or the amount of the assessment, at $60,000 for each of said years.   There was not, and, in the nature of the case, there could not have been, a judgment for a sum of money declared to be due from the bank to the city of Vicksburg.   It is not a judgment for the possession of property, real or personal; it is not a judgment for the dissolution of any restraining process; and it is not a judgment for the sale of property to satisfy a sum out of the proceeds of sale, or to enforce or establish a lien or charge or claim upon property.   The case is not embraced within the terms of § 4360, code 1892, and damages can only be awarded in the cases expressly provided for by the statute.   *Redd* v. *Thompson*, 56 Miss., 230.

The judgment is in no proper sense one contemplated by § 4360, but is purely a judgment fixing an assessment on the bank for taxes not theretofore assessed or paid.   In this judgment are two fundamental findings, viz.: (1) That the bank's property was liable to taxation; and (2) that the valuation of the property or the amount of the assessment was $60,000; but there is nothing more.   There is no intimation in the judgment of any sum of money due by the bank, nor was there any necessity for any judgment for any sum.   Liability to taxation being found by the judgment, and the amount of the assessment or the valuation of the property being also found by the judgment, the court below had reached the limit of jurisdiction in the matter.   Without an appeal from that judgment, the city authorities would have proceeded to collect the municipal taxes in the manner prescribed by law, and, with an appeal and an affirmance of the judgment below, the city authorities will

likewise proceed to collect the proper taxes; but the amount to be collected was not adjudged by the circuit court, nor was it within the province of that court so to do in this proceeding. *Clark* v. *Bank*, 61 Miss., 614.

Under this view as to the imposition of the damages sought to be secured by the motion now before us, it will readily be seen that we cannot allow the damages claimed in the motion.

*Motion denied.*