### JOHN D. HAWKINS *v.* WILEY P. MANGUM.

1. CONSTITUTIONAL LAW. *Constitution* 1879, *art.* 5, *sec.* 21. *Ib.*, *art.* 12, *sec.* 20. *Assessment for taxation. Laws* 1888, *p.* 24.

   The act of 1888 (Laws 1888, p. 24), dividing the counties of the state into classes and the lands therein into sub-classes, fixing, according to quality, a maximum and minimum value for taxation on the lands in the several classes, and confining the assessor to the limits so fixed, is unconstitutional. It violates art. 5, sec. 21, constitution 1869, providing for an assessor in each county, and art 12, sec. 20, same constitution, requiring property to be taxed in proportion to its value.

2. SAME.  *Equalization act.  Laws* 1890, *p.* 19.

> The act of February 24, 1890 (Laws 1890, p. 19), authorizing an equal-
> ization of assessments (the assessments made under the act of 1888,
> being then in use in the state), did not, and proceedings under it
> could not, cure an unconstitutional law or a void assessment made
> under it.

FROM the chancery court of Washington county.

HON. A. MC. KIMBROUGH, Chancellor.

Hawkins, the appellant, was the complainant, and Mangum,
the appellee, was defendant in the court below.    The object of
the suit was to cancel a tax title to the land in suit, which tax
title was based on the assessment of 1889, made under the act
of 1888.    Defendant's demurrer to the bill of complaint was
sustained in the court below and the bill dismissed.    The com-
plainant appealed to the supreme court.    The nature of the
controversy—the constitutionality of the act of 1888—is ap-
parent from the opinion of the court.

*William Griffin*, for the appellant.

The act of 1888 (Laws 1888, p. 24) is unconstitutional.    It
violates article 12, section 20, and article 5, section 21, of
the constitution of 1869.    The pretended assessment, under
which the lands were sold, based on said act, was therefore
void.

Property is required by the constitution to be taxed in pro-
portion to its "value," to be ascertained by the assessor "as
directed by law."    The provisions of the constitution mean
the actual value of the property; "to be ascertained by law"
contemplates the enactment of laws prescribing the procedure
by which the assessor is to ascertain the value of the property
to be assessed, and not that the legislature shall fix the value.

The legislature has the authority to create taxing districts,
but only for the purpose of special taxation for local improve-
ments, according to the benefits received.    But for the purpose
of general taxation the legislature cannot classify the lands

of a state, and affix an arbitrary value, regardless of the actual value of the lands assessed.

"It is required usually that property be taxed according to its value; this to secure equality and uniformity. Constitutions sometimes require this in express terms; and where such constitutional provisions exist, statutes laying taxes on any other basis than that of the value of the property taxed are void. Arbitrary or artificial values may not be attached to property, nor may arbitrary or artificial rules for the estimate of values be adopted." 25 Am. & Eng. Enc. L., p. 65 and notes.

In *Daily* v. *Swope*, 47 Miss., 367, and *Vasser* v. *George*, 47 Miss., 713, the distinction between local and general taxation was clearly drawn, and those cases reaffirmed in *Adams* v. *Bank*, 75 Miss., 701.

Chapter 9 of the laws of 1888, divides the lands of the state into five classes, and each class is again divided into eight sub-classes. For instance, the first quality of lands in the first class is valued at $20 per acre, and the eighth quality at 50 cents per acre. In the fifth class the first quality is valued at $8 per acre and the eighth quality at 50 cents per acre, also, and like scaling of values in intermediate classes, as set out in section one and two of the act.

By section 3 of the act the assessor is required not to ascertain the value of the property, but merely to decide to which class it belongs.

By section 6 power is conferred on the assessor to raise the valuation, *i. e.*, quality, if he considers same too low, but he is restricted in his valuations to the maximum value mentioned in that particular class.

Section 4 recognizes the valuations placed upon the land mentioned in the first and second sections of the act to be purely arbitrary and artificial, as it provides that property in, cities, towns and villages, and within two miles thereof, if it

exceeds in value the first quality of land in the county so classed, shall be assessed at its real value.

The act loses sight of the equality and uniformity contemplated by the constitution in its most essential particular. Lands in the fifth class might be as valuable as those in the first class, and probably are. Lands in the first and fifth class might be worth $50 per acre, yet neither the owner, the assessor or the board of supervisors, under this provision of the act, could raise the assessment to the true value of the property. Again, take the lands within two miles of the corporate limits of any city, town or village, which are required to be assessed at their true value. As an illustration, lands in the vicinity of Greenville and within two miles of the corporate limits, for farming purposes, are not worth as much as lands situated on Deer Creek and elsewhere in the county, yet these lands can be sold for many dollars per acre more than lands situated elsewhere in the county, although they might be devoted to farming purposes for many years to come. Why could not lands be just as valuable within two and one-eighth miles as land within two miles? Area is made the standard of value, within two miles of a corporation, to meet the constitutional requirements. The result is that property in the first class and in cities, towns and villages is made to bear more than its just proportion of taxation.

As said by the court in *State* v. *Tonella*, 70 Miss., 701, "the question of values is one of the most difficult of solution in the administration of the law," and by Governor Stone, in a message to the legislature on the subject: "Value depends on many things. It varies greatly with circumstances, even in the same localities, and to place groups of counties and millions of acres of land by arbitrary enactment in prescribed classes, with a valuation of each fixed by the statute, without regard to what may be according to the true value, would be a disregard of the plain constitutional provisions of this important subject."

In *Adams* v. *Bank*, 75 Miss., 701, the court, in construing

the constitutional provision, "property shall be taxed in proportion to its value," says: "It means that property shall pay taxes in proportion to its value; it can mean nothing else."

There can be no difference in principle between an act creating and fixing an artificial value in certain localities for the purpose of taxation, and one providing for diminution or increase of taxation in others. *Murray* v. *Lehman*, 61 Miss., 283; *State* v. *Adler*, 68 Miss., 487; *Adam* v. *Bank*, 75 Miss., 722. Again, the act usurps the power conferred on assessors by art. 5, sec. 21, of the constitution of 1869, in this: They are permitted to assess, but they cannot exceed the maximum and minimum values fixed by the legislature, regardless of the constitution requiring all property "to be taxed in proportion to its value." An assessment can only be made by an officer designated by law to make it. When the constitution devolves that duty upon a particular person, the legislature may not substitute another. It is true that the assessor may perform his duties within the limits of the act, but his authority is so restricted that it practically amounts to an abolition of the office. The office of assessor is one of known and settled function, etc. *French* v. *State*, 52 Miss., 760; *State* v. *Thibodeaux*, 69 Miss., 96; *State* v. *Tonella*, 70 Miss., 701.

Chapter 9 of the laws of 1888 has been construed (1) by Governor Stone, in his admirable message to the senate and house of representatives of 1892; (2) by the legislature, in discarding the act which had been brought forward into the code of 1892, and re-enacting substantially the former laws contained in the codes of 1871 and of 1880.

*McWillie & Thompson*, for appellee.

The view presented by the bill, that chapter 9, acts 1888, under which assessment of 1899 was made, is unconstitutional, cannot prevail. The objection to the assessment on this ground must have reference to section 20, article 12, constitution 1869.

It was entirely competent for the legislature to provide a

general scheme for the equalization of the burdens of taxation, and this is exactly what it undertook to do by the act in question. It could either provide an agency—a board of equalization—to do the whole work or it could do the whole work itself, or do a part and leave the remainder to other governmental agencies. The legislature had taken note of the great superiority in lands in some of the counties of the state over the lands in the other counties, and determined, in the interest of equality and uniformity, not to leave the matter to the uncertain action of the local authorities. If this act does not direct an ascertainment of the just proportion in which lands should be valued for taxation on the basis of equality and uniformity throughout the state, it is because the legislature did not have the wisdom and discretion necessary for the work, and the unwisdom of an act, within constitutional limitations, does not render the act unconstitutional. Indeed the courts have no right to inquire whether the act was a wise exercise of power or not. Moreover, it may be said, with reference to the subject of taxation, that absolute equality and uniformity have always been recognized as being of impossible attainment. The words are used in the constitution in a relative and comparative sense.

There can be no doubt about the validity of the act of 1888 under the constitution of 1869, by which, and not that of 1890, it must be tested. The earlier is different from the later constitution in that to the words, "property shall be taxed in proportion to its value," the earlier constitution has the additional and very significant words, "to be ascertained as directed by law." Constitution of 1869, sec. 20, art. 12; constitution of 1890, sec. 112.

It was accordingly held in the case of *Vicksburg Bank* v. *Worrell*, 67 Miss., 47, that "the subject of taxation may be classified at the discretion of the legislature, and, if all of the same class are taxed alike, there is no violation of the equality and uniformity required by the constitution." It is too well

settled for dispute at this day that the constitutional limitation did not affect the power to classify, but to taxing equally subjects that belonged to the same class.

The act of 1888 did not displace the assessor, nor substitute any other officer in his stead, as was complained in *State* v. *Tonella*, 70 Miss., 701, cited for the appellant. Moreover, it did not in fact cut him off from fixing values. It required that he should designate the quality of each particular tract of land in his county, and while the whole area of the county belonged to a certain class, it was divisible into eight qualities, and, should the assessor have chosen to do so, the lands in the fertile counties of the first class could have been given a valuation by lowering the quality no higher than the valuation put upon the poor lands of the fifth or last class by elevating the quality; and this matter of indicating the first quality rested, under the act, entirely with the assessors. In view of the very high maximum valuation in each class, much higher than any lands of the class were in fact ever assessed, it is idle to say that the assessors could not exceed the maximum of the class to which their respective counties belonged. The evil sought to be remedied by the legislature was not high assessments, but one arising out of the practice of assessing lands at a figure entirely too low in portions of the state where a greater fertility of the soil gave it a high value, by reason of which the taxation based upon such assessments lacked both equality and uniformity. It should be borne in mind that while the constitution provided for assessments, it was not assessments but *taxation* that must be equal and uniform, and in the face of the evil mentioned it became necessary to resort to a general scheme of classification and equalization, which was not only a wise measure but also clearly within the authority of the legislature. Indeed, by the terms of the constitution the value was "to be ascertained as directed by law," that is to say, in the manner to be provided by the legislature in its discretion. If as shown by appellant's quotation from *Adams* v. *Bank*, 75

Miss., 721, the constitutional provision "that property should be taxed in proportion to its value," meant "that property shall pay taxes in proportion to its value," it would seem that the desired equality related to the actual burdens laid upon property and not to assessments, which were only an agency for ascertaining values subject to perversion from its true purpose. Certainly when we see what equality in taxation means, and couple such meaning with the further provision of the constitution of 1869 that "values are to be ascertained as directed by law," there can be no doubt about the constitutionality of the act in question.

We appreciate what is said in the able brief of appellant touching the constitutional powers and prerogatives of the county assessors, but cannot overlook the confusion that their undue extension would lead to in both our judicial decisions and the practical operation of our revenue system. If the power of the assessor to fix values is exclusive under the constitution, and there is no force in appellant's argument otherwise considered, by what rights do our boards of supervisors sit for the equalization and correction of assessments? The constitution gives them full jurisdiction over roads, ferries and bridges, and provides that they shall perform such other duties as may be required by law, so that, if the legislature had chosen to withhold from them the power to equalize and correct assessments, they would have none. It is thus seen that the supervisors derive all their power in this respect from the legislature, and it is therefore unreasonable to argue that the supervisors are more potent than the legislature, the source of their power, particularly when the constitution of 1869 in terms committed to the legislature the manner in which values shall be ascertained, and in nowise defined the duties of assessors. The argument of the appellant on this head proves, if it proves anything, entirely too much. He would cut off all equalization and correction, and ignore those decisions in which it was held that, under the statute, the collector might assess

in certain cases, and that the imposition of specific privilege taxes at a certain rate per mile on railroads, in lieu of *ad valorem* taxation and according to the classification of the roads, was a legitimate exercise of the legislative power under the constitution of 1869, which did not contain the authorization of a special method of railroad valuation and assessment found in section 112, constitution of 1890. *State* v. *Simmons,* 70 Miss., 485, and *Cato* v. *Gordon,* 62 Miss., 373, construing section 513, code of 1880; *Adams* v. *Railroad Co.,* 77 Miss., 194, applying act of 1886.

The case of *Thibodeaux* v. *State,* 69 Miss., 683, relied on by appellant, is more favorable to the appellee, because the reason of the reversal in that case was that the privilege taxes sued for by the revenue agent had never been assessed by the collector. We do not find any better support for appellant's contention in any of the cases cited by him, nor any sufficient reason in original principles for the adoption of a view that would operate in the most disastrous manner to the titles to thousands of acres of land throughout the state. The act of 1888 was once before the court, when, to say the least, no constitutional objection attracted attention. *Union Investment Co.* v. *Harrison County,* 67 Miss., 614. It will be seen from this decision that the county assessors were by no means relieved of their duties by the act in question.

Argued orally by *T. A. McWillie,* for appellee.

CALHOON, J., delivered the opinion of the court.

In this case we are compelled to decide whether the act of March 8, 1888, entitled, "An act to equalize assessments in the different counties in the state" (Laws 1888, p. 24), is valid, under the constitution of 1869. Section 21, art. 5, of that constitution is this: "A sheriff, coroner, treasurer, assessor and surveyor shall be elected in each county by the qualified electors thereof, who shall hold their offices for two years, unless

sooner removed.'' And sec. 20, art. 12, is this: ''Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law.'' The act of 1888 divides the counties by name into five classes, numbered consecutively from one to five, and then divides each class into eight subordinate classes as to quality of lands, upon which it places an arbitrary value based on the quality. The first quality of the first class of the subordinate class of the main class No. 1, it rates at $20 per acre, the second at $16, and so on down to 50 cents in the eighth subordinate class. The first quality of land in the counties of the second main class it rates at $16 per acre, in the counties in class three, $12, and so on down to $8, all running down to the eighth quality, which in all is rated at 50 cents per acre. It then requires assessors to determine the quality to which the lands in their counties belong, and put them in their appropriate class, taking into consideration improvements and proximity to navigation. Having thus determined the appropriate general class of lands according to quality, the class, and not the very value of the specific lands, determines the valuation for taxation. In the fourth section the legislature has adjudicated that its own action had no reference to particular actual value of particular lands, because, having in the preceding section excepted land in cities, towns and villages, and excepted stores, it provides that land in cities and towns, and within two miles of them, and also in villages where values exceed in value the first quality, ''shall be assessed at its real value.'' This act does not admit of taxation of ''all property in proportion to its value,'' as the constitution requires, but adjusts it according to the opinion of the assessor, not of its real value, but as to what general class it ought to be put in. It is difficult to see how taxation can be ''equal and uniform'' when lands within two miles of a town are taxed at their ''real value,'' and those at two and a quarter miles are dumped into a general class, with an arbitrary maximum and minimum valuation. Valuation

must be actual, not artificial; by particulars, not by groups. A system of averaging values by classes, or geographical distribution, cannot result in equality and uniformity of taxation in " proportion to value."

The words at the conclusion of section 20, " to be ascertained as directed by law," can warrant no such system. They do not mean that the legislative department is to perform the judicial function of ascertaining values. They do not mean that the legislature may assess property. The constitution had already provided for an assessor, whose duties were known through the entire history of the state. The meaning is that the legislature may enact laws by which values are to be ascertained, not that it shall ascertain them. This act is a general act, affecting the whole state, not a local act, for the benefit and protection of particular districts. The distinction is plain between the two classes of legislation, and has been often drawn by the courts in many states and in this state. But, whenever the distinction has been drawn in our own appellate court, it shows that such legislation for localities would not be tolerated in a general scheme of taxation affecting the whole people. In *Daily* v. *Swope*, 47 Miss., on page 381, Judge Simrall says: " The convention sought to devise a rule by which taxation, imposed for the general and ordinary expenses of the state and county administrations, should operate equally in all parts of the state. No discrimination shall be made which would disturb uniformity, and, when the rate has been determined, the assessment shall be on the *ad valorem* principle." In *Vasser* v. *George*, 47 Miss., 721, the same great judge, in considering the same section 20 we are now on, and still while drawing the distinction between general taxation and district taxation for local benefit arising from local exigencies, says: " The limitation upon the power in that section only applies and governs taxes levied for the usual, ordinary, and general purposes of the state, county, and incorporated city or town, and does not include special assessments for

local objects." A collation of authorities denouncing arbitrary and artificial rules for the estimation of values may be found in 25 Am. & Eng. Enc. L., 65. We refer, also, to the message of Gov. John M. Stone, of March 31, 1892, vetoing an act similar to the act under consideration. The reasoning of that able document, which was under the constitution of 1890, which omits the words, "to be ascertained as directed by law," nevertheless applies in full force to the constitution of 1869.

*Reversed, and demurrer overruled, and sixty days allowed for answer.*

---

After the delivery of the foregoing opinion, *Mc Willie & Thompson*, for appellee, presented the following

### SUGGESTION OF ERROR:

We desire, with much deference to suggest error in the decision reversing the decree of the court below in the above cause. The effect of the curative act of 1890 upon the assessment in question is entitled to grave consideration, but, before referring more particularly to the provisions of that act, we call the court's attention to an apparent discordance between the decision in this case and several others which have never been in terms overruled.

In the case of *Bank* v. *Worrell*, 67 Miss., 47, it was held that the act of 1888, relieving banks of *ad valorem* taxes on payment of a designated privilege tax, was constitutional, and that the real estate of a bank, bought with its funds, was exempt under such legislation from ordinary *ad valorem* taxation.

Again, in *Bank* v. *Adams*, 74 Miss., 179, the same act was upheld, this court holding that the payment of the prescribed privilege tax exempted the property of a bank from *ad valorem* taxation.

Recollecting that this act of 1888 classified banks for taxation, and that the privilege taxes thereby imposed were in lieu of such *ad valorem* taxes as the bank property would have otherwise been subject to, it would seem that we have a case involving the exercise of legislative authority to quite as large an extent as in the act under review in the present controversy. It is true that the bank assets were to be determined by the return of the assessor, but upon the amount of the assets thus ascertained the law imposed a privilege tax of a specific amount in nowise the equivalent of *ad valorem* taxation. The constitutional mandate relates to "taxation," and not assessments, and, if the lands and other property of banks could be so taxed, we are at a loss to see why the legislature exceeded its authority in the act assailed by the appellant.

In the case of *Adams* v. *Railroad Co.*, 77 Miss., 291, the legislation subjecting railroad companies to privilege taxes in lieu of *ad valorem* taxes is relied on as a constitutional exercise of power, although the payment of such privilege taxes was to operate as an. exemption from all *ad valorem* taxes, and the opinion in that case denied the authority of the legislature to grant any exemption from taxation. The taxation from which there was no power to grant an exemption was certainly the taxation contemplated by the constitution—*i. e.*, equal and uniform taxation according to value. The idea that by calling the privilege tax a commutation tax the power of the legislature was extended, cannot stand the test of criticism. It is equivalent to saying that the legislature may do indirectly what it cannot do directly under the constitution, and to sanction this legislation we are forced to look at the concluding words of the provision touching the equality and uniformity, and its proportion to value, "a value to be ascertained as directed by law," and recognize those words as committing to the control of the legislature the method of ascertaining such value.

The act entitled, "An act to authorize the equalization of land assessments," approved February 24, 1890, was mani-

festly intended to have a curative effect. Indeed, the nature of the act suggests the idea that the author, without in terms questioning the validity of the act of 1888, was guarding against any future attack upon it by additional legislation which would effect its validation, the taxpayer being allowed full opportunity to make such objections to the assessment of his particular land as he might deem proper.

The act imposed on the chancery clerks throughout the state the duty of giving notice, published for thirty days previous to the August meeting of the boards of supervisors, that all persons feeling aggrieved ''at the present land assessment'' would be heard by the board at that meeting, and fully empowered the boards to equalize assessments, granting relief from overvaluations where it might be proper to do so. The act further directed the auditor of public accounts to furnish the clerks printed forms for the use of persons who might apply for relief, required the person seeking relief to make oath to his application, and provided that the assessments in the various counties, after being so equalized, should be '' binding and conclusive.'' Laws 1890, pp. 19, 20, 22.

As the court found it necessary to pass on the constitutionality of the act of 1888, we assume that the other objections to appellee's title were considered without merit, and we therefore treat the bill as presenting the single objection that the act of 1888 was unconstitutional. It will be noticed that the bill itself shows that the land was regularly sold to the state for taxes in 1892 and included in the collector's list evidencing the sales of that year. It further shows that the state conveyed the land by patent to the appellee in 1898. The affirmative showing of the bill is unaccompanied by any averment of an application to the board of supervisors for the correction of the assessment of this tract of land, nor of any action of the board in respect to the assessment of the same, nor any appeal from such action.

Inasmuch as the act of 1890, by its own terms, gave notice

of the time, place and purpose of the meeting of the board of supervisors, and one form of notice which stated clearly the desired relief would be as good as another, it may well be questioned whether the publication of notice by the clerk and the preparation of the forms of application for relief by the auditor were essential prerequisites to action by the board of supervisors. But, however that may be, in the absence of all averment to the contrary, the court will presume that the officers discharged the duties imposed upon them by the act, and the assessment in Washington county was equalized and validated as in the other counties of the state.

. It is not necessary for the appellee to rely even upon this safe presumption, for, by the law in force at the date of the sale (code 1880, § 526), the list of lands sold to the state, which, by the averments in the bill, includes this tract, is made "*prima facie* evidence that the assessment and sale were legal and valid."

As pertinent to the question in hand, we notice the following decisions of this court:

Taxpayers failing to appeal from an order of the board of supervisors approving an assessment are concluded thereby. Code 1892, §§ 80, 3793; *Investment Co.* v. *Suddoth*, 70 Miss., 416. Equity has no jurisdiction to revise assessments in the absence of fraud or mistake. *Brooks* v. *Shelton*, 47 *Ib.*, 243. In the absence of proof as to when an assessment roll was returned, the tax deed or duly certified list of land sold to the state will raise the presumption that it was at the time required by law. *Grayson* v. *Richardson*, 65 *Ib.*, 222; *Morgan* v. *Blewitt*, 72 *Ib.*, 903. A meeting of a board of supervisors not affirmatively shown to have been illegal is presumed to have been legal. *Brigins* v. *Chandler*, 60 *Ib.*, 862; *Corburn* v. *Crittenden*, 62 *Ib.*, 125. Although the approval of an assessment roll by the board of supervisors was at a time when there could be no regular meeting, in the absence of evidence to the contrary it will be presumed that it was at a special meeting

legally held. *Tierney* v. *Brown*, 65 *Ib.*, 563. As the sales for three years appear to have been made under the act of 1888 as thus validated, it will be seen that by way of apology for our persistence, we need only refer to the far-reaching effect of the decision. We submit that the decree of the court below should be affirmed.

CALHOON, J., delivered the opinion of the court on suggestion of error.

Our regard for, and deference to, the opinion of learned counsel for appellee have made us re-examine this case with great care. In the act under consideration there appears no legislative purpose to have an assessment for taxation according to value. On the contrary, the confessed purpose is not to do so, but to have it within two limits of money value fixed by the will of that body, according to arbitrary and artificial groupings. Whatever the actual value may be, even if it may be $50 or $100 per acre, the assessor is limited to a maximum valuation of $20, $16, $12, $10, or $8, according to class by quality, and this cannot consist with the constitution of 1869. *In re Taxation of Mining Claims*, 9 Colo., 638, s. c. 21 Pac. 476; *Cheshire* v. *Berkshire Co.*, 118 Mass., 389; *Assessment Board* v. *Alabama C. R. Co.*, 59 Ala., 556; *Williams* v. *Bettle*, 51 N. J. Law, 517, s. c. 18 Atl., 750. The cases referred to by counsel from our own reports have no pertinency to the question we are now considering. *Bank* v. *Worrell*, 67 Miss., 56, s. c. 7 South., 219, was on the privilege tax act (Laws 1888, p. 16), which put a privilege tax on banks, fixing the sums according to capital stock. It simply upheld the power to put a privilege tax on a business, and to exempt the property of that business from all other tax. The court said: "The legislature may select the subjects of taxation, and everything not designated as taxable is exempt for the time being. The subjects of taxation may be classified at the discretion of the legislature, and, if all of the same class are taxed alike, there is no

violation of the equality and uniformity required by the con-
stitution. It is admissible for the legislature to tax a business,
and to provide that payment of a tax prescribed for the priv-
ilege of pursuing it shall be a substitute for, and in lieu of, all
other taxes on the means employed in it." *Bank* v. *Adams*,
74 Miss., 179, s. c. 21 South., 401, simply recognizes that doc-
trine. In the case at bar we find no privilege tax act, no im-
position of a privilege tax on any trade, business, or calling,
no classification for an equal tax, but a grouping of all lands
in classes by quality in a manner to make taxation according
to real value impossible, and to make it certain that it could
not by any possibility be equal in its burdens. Where a thing
is undertaken to be taxed, it can be taxed in no other way than
according to value. The constitution requires it, and every
citizen is interested in it, so that the burdens shall be equal and
uniform. The legislature may exempt all horses from any
taxation whatever, but if it undertakes to tax them it must be
by value to be ascertained. It may not say that all gray
horses shall be valued at $100 each and all sorrel horses at
$75. It may provide that the business of raising horses shall
pay a privilege tax, and that this shall be in lieu of all taxa-
tion on the horses raised, but if it taxes the horses instead of,
or as well as, the business of raising them, it must be by value.
This is the mandate of the sovereign people in convention, and
it must be obeyed by the courts, whether the consequences en-
shroud us in darkness or flood us in light. But we see no hid-
eous and destructive monsters looming in the perspective of
the opinion under review. We would not heed them if we
did see them. Let them come, if they must be gendered by
the declaration that the property of the citizen cannot be taken
or taxed in defiance of the plain principles of the organic law.
The act of 1890 (Laws 1890, p. 19) has no sort of applica-
tion to a case where there was no assessment. It has, and can
have, no reference to an assessment absolutely void because of
an unconstitutional law.

Moreover, the legislature, assuming the validity of the law, as we suppose, the act is plainly, at most, simply a provision, as in many other acts, for hearing complaints as to valuations, and in this act as to such as may be "in excess of the average valuation of similar property in the county." This act cannot cure an unconstitutional law. It cannot apply, even if it could then be efficacious, to an assessment which was no assessment at all. *Ross* v. *Lane*, 3 Smed. & M., 695; *Brown* v. *Commissioners*, 50 Miss., 468; *Dingey* v. *Paxton*, 60 Miss., 1038; *Insurance Co.* v. *Pollard*, 63 Miss., 641; *State* v. *Adler*, 68 Miss., 487, s. c. 9 South., 645; *Thibodeaux* v. *State*, 69 Miss., 683, s. c. 13 South., 352; *State* v. *Tonella*, 70 Miss., 701, s. c. 14 South. 17; *Tuttle* v. *Everett*, 51 Miss., 27.

*The suggestion of error is overruled.*