M. T. REED CONST. CO., et al. *v.* MARTIN.

Nov. 24, 1952

No. 38538          9 Adv. S. 56          61 So. 2d 300

*Lotterhos & Dunn,* for appellants.

*Roy J. Goss* and *Henry Mounger,* for appellee.

LEE, J.

On February 17, 1950, Robert E. Martin, fifty-nine years of age, a skilled carpenter earning $60 a week, sustained a break of the lower third of the right femur bone, arising out of and in the course of his employment with M. T. Reed Construction Company. He was hospitalized for about two months. Doctor G. S. Daly was his physician and surgeon. He used skeletal traction to effect a union, and treated Martin until his discharge on August 29th following. At that time, the bone had healed but the leg was one-fourth of an inch shorter than before the injury. The doctor did not anticipate that his patient would suffer pain, and thought there was no occasion for it. He expected that use of the leg would, in a reasonable time, restore all normal functions, except the shortened condition, and that such pain as might be occasioned from use would not be disabling. He advised the insurance carrier on September 4th that Martin would have a ten per cent permanent disability. Compensation was paid to December 15th, and the company offered $37.50 in full settlement through December 29th, which offer was refused, and thereafter the claim was heard by an attorney-referee on July 16, 1951.

In this hearing, Martin testified substantially as follows: He had been unable to work since his injury, except to make some screens over a period of two days, which work could have been performed in a half day before his injury, and for which he received $13.50. On trying to make an ascent his knee would "flop", and on making a descent, he would have to have support. He had to be very particular in walking even on level ground. If he walked or used his leg to any appreciable extent, it would swell, cause pain, and necessitate the taking of B. C.'s or pain relieving agents. He also used liniments and an electric pad to alleviate pain. He had followed carpentry since his early youth, and is not trained for any other work. He had been to local contractors, but

they knew about his injury, saw him limping around, and would not hire him. Between his discharge and the hearing, he consulted Dr. A. H. Applewhite four times about his condition.

Dr. Applewhite testified that there was an atrophy of the right knee joint, with evidence of edema. He measured the circumference around the knee, and on a later occasion, it was two inches larger. It would be hazardous for him to climb ladders and do the routine labor as a carpenter, and his work would be unsatisfactory. Because of Martin's age and the duration of the injury, there is not only a poor prognosis for recovery, but, in his opinion it is not possible that he could ever recover. He declined to qualify the percentage of disability because, in his opinion, the swelling, the fluctuation in size, and the pain will remain with Martin all of his days.

Dr. Daly testified as to the treatment from the date of the injury until his discharge, and gave it as his opinion that the disability would not exceed twenty per cent. The bone was healed and the function was good. He thought there was not enough atrophy to prevent climbing and that there was no reason for pain. And, on that account, he did not include pain in arriving at the per cent of disability. However, the doctor did not see or examine Martin any more after his discharge, and he conceded that, if he now has pain, it may last two or three years.

So, on the one hand there was the opinion or prediction of Dr. Daly, arrived at on August 29, 1950, that nothing would happen in the future, on account of the injury, to cause Martin's disability to exceed twenty per cent. On the other hand, according to the evidence of the claimant and Dr. Applewhite, it has actually turned out that Martin has not worked and is unable to work; that the use of the leg results in pain, for which he must take

palliatives; and that this condition will remain with him the rest of his days.

At the conclusion of the hearing, the attorney-referee held that Martin had sustained the permanent and total loss of the use of his right leg, and under (2) and (18), Par. (c), Section 8, Chapter 354, Laws of 1948, and amendments thereto, awarded 175 weeks at $25 per week from August 28, 1950, less the amount paid on the assumption that his disability was only ten per cent. The full Commission heard the cause on the record and oral arguments and briefs, and amended the award of the attorney-referee by reducing the permanent disability to twenty per cent. On appeal, the circuit court reversed the Commission, and reinstated the award of the attorney-referee. From the judgment entered, the employer and its carrier appeal, and the claimant prosecutes a cross-appeal.

(Hn 1) The evidence of the two doctors is not actually conflicting, but can be easily reconciled. One doctor, on the basis of his treatment and findings at the time of discharge, was of the opinion that the disability amounted to ten per cent, which he subsequently increased to twenty per cent. This was, in effect, a prediction as to what would happen in the future. Against such prediction was the positive testimony of the other doctor, who found the knee to be swollen; that it fluctuated in size; that the claimant suffered pain; that he was unable to work; and that he can never recover. This evidence verified and confirmed the claimant's version.

In L. E. Mut. L. & A. Ins. Company v. Meeks, 157 Miss. 97, 127 So. 699, the query was whether or not Meeks had sustained the total and permanent loss of sight in an eye. One doctor testified that Meeks had some ability to distinguish light and could see a dark object where his fingers were held at a distance of four feet, but, for practical purposes, there was a total loss of vision. The other doctor testified substantially to the

same effect, but was of the opinion that the ability to perceive objects, under such circumstances, did not constitute total blindness. The Court there said: "We do not regard the testimony as being conflicting, but think the question turns upon the construction of the meaning of the terms used in the policy." The Court held that the difference in the versions of the doctors did not make an issue for the jury, and that the court committed no error in giving a peremptory for Meeks.

When the whole evidence is considered, it leads inescapably to the conclusion that Martin, by reason of his injury, is prevented from doing the substantial acts required of him as a carpenter. Moreover, due to his advanced age and physical condition, it appears most unlikely that he will be able to pursue any other gainful employment.

The opinion in the Meeks case, supra, cited Metropolitan Casualty Ins. Company v. Cato, 113 Miss. 283, 74 So. 114, and observed that the Court there held that one may be "totally disabled, notwithstanding the fact that he occasionally is able to perform some single act connected with his business." It also cited Equitable Life Assurance Society v. Serio, 155 Miss. 515, 124 So. 485, and observed that it was there held that "recovery under insurance policy by reason of total and permanent disability does not require a condition of complete helplessness, nor such an entire physical or mental inability in respect to pursuit of an occupation or employment that the insured can do absolutely nothing; . . ".

In the recent case of Lipnick v. New York Life Insurance Company, 211 Miss. 833, 52 So. 2d 916, on the question of what is necessary to constitute total and permanent disability, this Court cited Mutual Benefit Health & Accident Association v. Mathis, 169 Miss. 187, 142 So. 494, and quoted with approval therefrom as follows: "in order for one to be totally disabled within the meaning of a health or accident insurance policy, **(Hn 2)** it is not

necessary that he be wholly incapacitated to perform any duty incident to his usual employment or business, but, *if the insured is prevented by his injury* or illness *from doing the substantial acts required of him in his business,* or if his physical condition is such that, in order to effect a cure or prolongation of life, common care and prudence require that he cease all work, *he is totally disabled within the meaning of such policies."* (Emphasis supplied.)

We are therefore of the opinion that the learned circuit judge was correct in reversing the order of the Commission and in reinstating the award by the attorney-referee. Lucedale Veneer Company v. Rogers, 211 Miss. 613, 48 So. 2d 148 and 53 So. 2d 69.

(Hn 3) The cross-appeal contends that, since Martin is totally and permanently disabled, he is entitled to permanent, total disability for 450 weeks under provisions of (a), Section 8 of said chapter. But the disability with which we deal is occasioned by the loss of the use of the leg, and the maximum period for which recovery is permitted, on that account, is fixed arbitrarily at 175 weeks.

Consequently the judgment of the lower court is affirmed on both direct and cross-appeal.

Affirmed.

*Roberds, P. J.,* and *Hall, Holmes* and *Arrington, JJ.,* concur.

## ON MOTION TO CORRECT JUDGMENT
March 16, 1953, 24 Adv. S. 43, 61 So. 2d

Holmes, J.

This is a motion by the appellee to correct the judgment of affirmance heretofore rendered in this cause so as to provide for the allowance of interest at the rate of six per cent per annum and five per cent damages on the judgment of the Circuit Court, from which the appeal in this cause was prosecuted.

The suit arose out of a claim of the appellee for compensation under the Mississippi Workmen's Compensation Act for the loss of his leg. Pursuant to a hearing, the Attorney-referee, on July 16, 1951, made the following award, after setting forth his findings:

"It is therefore ordered and adjudged that Western Casualty & Surety Company, insurance carrier for M. T. Reed Construction Company in this cause, pay compensation to claimant, Robert E. Martin, in the amount of $25.00 per week for a period of 175 weeks, payable semi-monthly, beginning as of August 28, 1950, less and except therefrom the amount of $413.50 aggregating the sum that has already been paid to claimant and the sum that he has earned in his efforts to return to gainful employment, which payment in the amount of $400.00 was made to him upon the assumption that he was entitled to receive ten per centum of loss of use of right leg, and that such payment should be and it is hereby ordered to be applied upon the payments that shall be due to him by virtue of this order, all of which payments to be made in compliance with Section 8, Paragraph C, Sub-section 2 and Subsection 18, and other sections of the Mississippi Workmen's Compensation Law of 1948, as amended, and this order."

Upon a review by the Commission on October 29, 1951, the Commission modified the award of the Attorney-referee so as to fix the amount of compensation on the basis of twenty per cent disability. On appeal to the circuit court, a judgment was rendered on December 20, 1951 reversing the decision of the Commission and reinstating the award of the Attorney-referee. The appeal here is from the judgment of the circuit court which is, in effect, that rendered by the Attorney-referee. The judgment of the circuit court was affirmed by this Court on November 24, 1952. M. T. Reed Construction Company, et al. v. Martin, 9 Adv. S. 56, 61 So. 2d 300. A suggestion of error was filed by the appellants and

overruled on January 12, 1953. The judgment of affirmance made no provision for the allowance of interest or damages. It is the contention of the appellee on this motion that the judgment of the circuit court reinstating the award of the Attorney-referee is a money judgment for the total award of $25.00 per week for the full period of 175 weeks, and that the appellee is entitled to the allowance of interest thereon at the rate of six per cent per annum from the date of rendition, and to five per cent damages on the total amount of the award.

We have recently held in the case of J. & B. Manufacturing Company, et al. v. Cochran, 17 Adv. S. 18, 62 So. 2d 378, that each weekly installment of an award of compensation should bear interest at the rate of six per cent per annum from its due date until paid, and we reaffirm this holding.

Such right as the appellee has to the allowance of five per cent damages on the affirmance of the judgment of the circuit court is governed wholly by statutory enactment, and such damages can only be awarded in the cases expressly provided for by statute. Vicksburg Bank v. Wirt Adams, State Revenue Agent, 74 Miss. 179, 21 So. 401. The applicable statutes are Sec. 1971 of the Mississippi Code of 1942, and the amendment of Sec. 20, Chap. 354 of the Laws of 1948, appearing in Sec. 20 of Chap. 412 of the Laws of 1950. The amendment found in Sec. 20, Chap. 412 of the Laws of 1950, approved April 6, 1950, and in effect at the time of the entry of the judgment of the circuit court and in effect at this time, provides as follows: "Any award of compensation made by the Circuit Court and appealed to the Supreme Court shall bear the same interest and penalties as do other judgments awarded in the circuit court." The applicable part of Sec. 1971 of the Mississippi Code of 1942 provides as follows: "In case the judgment or decree of the court below be affirmed, or the appellant fail to prosecute his appeal to effect, the Supreme Court shall render judg-

ment against the appellant for damages, at the rate of five percentum and costs as follows: If the judgment or decree affirmed be for a sum of money, the damages shall be upon such sum.''

The effect of the aforesaid amendment to the Workmen's Compensation Act is to place awards of compensation made by judgment of the circuit court in the same category as other judgments of the circuit court, and to provide that in the event of an affirmance of an appeal therefrom to the Supreme Court, the same shall bear the *same* interest and penalties as do *other* judgments of the circuit court. The language of this amendment is plain and unambiguous, and it would do violence to its language to interpret it to mean that judgments for awards of compensation are to be placed in a more favored or different class than other judgments of the circuit court. Sec. 1971 of the Mississippi Code of 1942 fixes the penalties to be allowed on the affirmance of ''other'' judgments of the circuit court by providing that ''if the judgment or decree affirmed be for a sum of money, the damages shall be upon such sum''.

We have consistently held that this statute must be strictly construed against the claim of the successful party, Canal Bank and Trust Company v. Brewer, 147 Miss. 920, 114 So. 127; Firestone T. & R. Co. v. Fried, 202 Miss. 372, 32 So. 2d 454. We have recently held in workmen's compensation cases that the five percentum damages can not be allowed unless the judgment affirmed awards a definite or fixed sum of money. Mills, et al. v. Jones' Estate, 213 Miss. 680, 57 So. 2d 496; Stephens et al. v. Moore, et al., 1 Adv. S. 2, 60 So. 2d 391; J. & B. Manufacturing Co., et al. v. Cochran, 17 Adv. S. 18, 62 So. 2d 378. In the Cochran case, supra, it was held that damages are allowable under a judgment of this court only when a fixed amount of compensation is awarded in the lower court, and continuing, the Court said: ''Neither the order of the Commission nor the judgment of the circuit

court awards any definite or fixed sum of money . . . thus it is seen that the amount to be paid him is not at this time a definite and fixed sum, even though it is established that the weekly payments are $25.00 each.'' Can it be said that the amount to be paid appellee under the judgment in question is at this time a definite and fixed amount? The answer to this question must be determined by appellee's rights under the judgment as governed by our workmen's compensation laws. It is to be noted that the judgment in question does not unqualifiedly award to the appellee compensation at the rate of $25.00 per week for the full period of 175 weeks. It adds the proviso that such payments shall be made ''in compliance with Section 8, paragraph (c), Subsection 2 and Subsection 18, and other sections of the Mississippi Workmen's Compensation Law of 1948, as amended, and this order''. This proviso qualifies the award of weekly benefits and renders appellee's rights thereto subject to the provisions of our workmen's compensation laws. What then are these rights? Has the appellee a vested property right in the award which can survive in favor of his heirs, or will the weekly benefits terminate upon his death? There is no provision in our workmen's compensation law vesting in a claimant a property right in an award such as was made in this case which can survive in favor of his heirs. On the contrary, the act provides payment to the ''employee'' and defines compensation as the ''money allowance payable to an injured worker''. Further, it is the general rule adhered to in most jurisdictions that no such property right is vested in the claimant to the entire award in the absence of a provision in the act to the contrary. The rule is stated in Larson's Workmen's Compensation Law, Vol. 2, pages 51-53, as follows:

''In the opening portion of the book, it was pointed out that one of the features distinguishing a compensation award from a tort recovery is the absence of any

property right in an award which can survive in favor of heirs. The problem most frequently arises in connection with schedule or other permanent partial awards, when an employee who has been awarded, say, 312 weeks' benefits for loss of an arm dies at the end of 12 weeks. In the absence of a special statute to the contrary, it has been held in most jurisdictions that his heirs have no claim upon the unaccrued 300 weeks' payments, since the award is a personal one, based upon the employee's need for a substitute for his lost wages and earning capacity.''

We think that the foregoing rule is sound and that its application is in furtherance of the purpose of the workmen's compensation law to provide a substitute for lost wages and earning capacity. We are of the opinion, therefore, that under our workmen's compensation law, the appellee has no vested right in the entire award made to him which can survive in favor of his heirs. The judgment must be construed in the light of appellee's rights under our workmen's compensation law, and when so construed, the amount of the award can not be said to be a fixed sum except as to the accrued and unpaid weekly installments. It is otherwise an award which terminates upon his death, a contingency indeterminate in point of time. We are, therefore, further of the opinion that the judgment is not so definite and certain as to constitute a money judgment on which the five per cent damages can be calculated except as to the weekly installments which have already accrued and remain unpaid to the date of the entry of the judgment of affirmance. It would seem that to hold otherwise would be to impose a penalty for the non-payment of installments which have not yet accrued and become payable, and which may never become payable. We do not think that the statute contemplates damages on installments of an award which may never become payable. The appeal has not superseded installments which are to

accrue in the future, and which may never become payable, and neither the employer nor the insurance carrier under its contract has become obligated to pay installments of the award before they accrue and become due. If the five per cent damages should be allowed on this appeal on the total amount of $25.00 per week for 175 weeks, and after the final termination of this suit, an action should be brought for accrued installments in default, resulting in a judgment in favor of the claimant and affirmance thereof by this Court, then the allowance of five per cent damages on such judgment would follow, thus resulting in the imposition of double damages on the amount of installments so involved. We do not think that such result should be made possible.

Since appellee was present in person at the original hearing, and no suggestion of his death has been made in this suit, the presumption is indulged that he was alive at the time of the rendition of the judgment of affirmance, and we are of the opinion that the judgment affirmed is definite and certain as to the amount of the weekly installments accrued and unpaid to the date of affirmance, and we are further of the opinion that the motion to correct the judgment of affirmance should be and it is hereby sustained to the extent only that the judgment of affirmance heretofore entered in this cause be corrected so as to provide for the allowance of five per cent damages on the total amount of weekly installments accrued and unpaid to the date of the judgment of affirmance heretofore entered, and so as to further provide that each weekly installment shall bear interest at the rate of six per cent per annum from its due date until paid.

Motion to correct judgment sustained in part.

*Lotterhos, J.*, took no part. All other Justices concur.