187 So.2d 586 (1966)
WALTERS BROTHERS BUILDERS and Aetna Casualty & Surety Company
v.
E.C. LOOMIS.
No. 44044.
Supreme Court of Mississippi.
June 13, 1966.
W. Thad Cochran, Watkins & Eager, Jackson, for appellant.
Binder & Bush, Pyles & Tucker, Jackson, for appellee.
SMITH, Justice:
This case involves the workmen's compensation claim of appellee and cross-appellant, E.C. Loomis, based upon an injury sustained during the course of his employment by Walters Brothers Builders, appellant. Aetna Casualty & Surety Company was the employer's workmen's compensation insurance carrier.
The Attorney Referee found that (1) claimant had reached maximum recovery on August 5, 1963, and had a 30% permanent partial disability of the right arm, *587 and (2) a preexisting condition of arthritis and bursitis was a material contributing factor in the result following injury, and that 20% of the disability was attributable to the preexisting condition.
The Full Commission affirmed the findings of the Attorney Referee.
On appeal, the circuit court reversed the Commission and held that (1) there was no substantial evidence to support its finding that a preexisting condition was a material contributing factor in the result following injury and (2) claimant had suffered a complete loss of use of his right arm, the result of which was total incapacity to earn wages as a painter, or in any other employ.
The court concurred with the finding of the Commission that the injury was to the right arm, a scheduled member, and that claimant's compensation was limited to 200 weeks as specified in Mississippi Code Annotated section 6998-09(c) (1) (Supp. 1964), at the rate of $35 per week.
From that judgment, Walters Brothers Builders and Aetna Casualty & Surety Company have appealed here, and claimant, E.C. Loomis, has cross-appealed.
Appellants, Walters Brothers Builders and Aetna Casualty & Surety Company, contend that the finding of the Commission was based upon substantial evidence and should be reinstated.
Appellee and cross-appellant, E.C. Loomis, contends there was no substantial evidence to support the Commission's finding and the circuit court was correct in reversing the Commission but erred in relating the injury to the arm, a scheduled member, and should have held that the disability was to the body as a whole.
The evidence shows that Loomis was a painter and was injured in September 1962 when he fell from a 5 1/2 to 6 foot ladder while painting a carport, striking a concrete driveway with his right shoulder. On the same day, he was examined by Dr. Wood. A tentative diagnosis was thought to show an "acromio-clavicular separation."
Upon further examination the next day, Dr. Wood was of the opinion that there was no capsule tear. Four days later, he was again seen by Dr. Wood who reported that, "examination * * * showed `freezing' of the right elbow, from old arthritis due to immobilization * * * He gives a history of old bursitis in that shoulder * * * still soreness. Soreness and restriction of motion indicated more of a bursitis of shoulder."
About a month later, on what apparently was claimant's last visit to Dr. Wood, x-ray did not show calcification, but it was Dr. Wood's opinion that he had a "mild acromioclavicular separation without capsule tear, but now has a (sic) exacerbation of an old bursitis or either a tenosynovitis of the long head of the biceps."
On October 25, 1962, Dr. Wood referred claimant to the Jackson Bone & Joint Clinic for examination and evaluation, where he was seen by Dr. W.C. Warner, an orthopedic surgeon.
Dr. Warner saw him about a dozen times between that date and August 5, 1963, the date on which the Attorney Referee held that claimant had reached maximum recovery. The treatment prescribed over that period was physical therapy, and exercise and continued injections of hydrocortisone.
On August 5, 1963, Dr. Warner reported, "* * * we are discharging him as of this date, with an estimated permanent disability of approximately 15% of the right upper extremity."
The Attorney Referee's findings of percentages as to the permanent partial disability of the right arm and as to the degree to which the preexisting condition contributed to the result are based upon testimony of Dr. Nix, a physician to whom claimant had been referred by his attorneys *588 shortly before the hearing for examination and evaluation of his injury.
Appellee and Dr. Nix testified at the hearing in support of the claim. Appellee gave a history of bursitis in his right shoulder and right elbow prior to his injury and said that he had consulted his personal physician who treated him for it. On further examination, his recollection of the details was vague and he minimized the seriousness of the condition. The doctor who diagnosed and treated him, and who was his family physician, did not testify. Appellee stated the condition had not persisted and that pain had subsided in a few days.
The x-ray examination of the claimant by Dr. Nix included comparison views of the left shoulder demonstrating minimal change in the acromio-clavicular joint with a widening of the joint space on the right, also that there was a small amount of calcification in the subdeltoid bursa on the right. Claimant failed to give Dr. Nix the history of preexisting bursitis.
In testifying, Dr. Nix stated that claimant initially appeared to have pain when using his right shoulder. The measurement of the right arm measured one-half centimeter less in circumference than the left arm. There was minimal weakness of flexion, extension and abduction of the right shoulder. He had almost normal range of motion of the right shoulder, although he stated he had considerable pain when he elevated his arm beyond forty-five degrees. He was given the Yergason test for acute bicipital tenosynovitis, and that was negative. Dr. Nix concluded that claimant had a frozen shoulder syndrome, with a second diagnosis of sub acute tenosynovitis. This was explained as an inflammation of the biceps tendon as it passes through the groove in the humerus at the shoulder. He concluded that the claimant had a 25 to 30 percent permanent partial disability of the right upper extremity. He stated that his opinion was based on the history given him by the claimant as well as his clinical findings.
Dr. Nix testified that on another occasion on which he had examined claimant he had found him suffering from osteoarthritis in his knee. He said that when claimant was referred to him for examination in connection with his injury that he "had no information of him ever having a problem with his shoulder before." He stated he had been in good general health until the time of the accident. Dr. Nix further testified that if he had been informed by claimant that there had been a prior diagnosis by another doctor of an arthritic or bursitis condition in his right elbow and right shoulder this would have had some effect upon his own diagnosis and he would have included another diagnosis which he did not include. He said, "that would have been calcerous tendinitis of the right shoulder, which I mentioned in the x-ray that there was a small amount of calcification in the subdeltoid bursa on the right. And this is something we commonly see in x-rays of the shoulder in people who have had no symptoms, and it commonly follows subdeltoid bursitis."
On re-direct examination, he affirmed his previous statement that he found calcification in the shoulder joint. He said, "The calcium, by x-rays, was located at the region of the subdeltoid bursa. And when a patient has calcareous tendinitis, they get a bursitis and deposition of calcium in the tendon and as this process resolves, it is impossible, without surgical exploration, to determine if the calcium is in the tendon or the bursa." He was pressed for an opinion specifically to the claim as to whether he was able to testify, "here today that he has any calcium in the tendon or in the bursa?" He responded, "Yes, he did have some by x-ray."
He further said:
"There was, as I mentioned the x-ray report, slight widening of the acromioclavicular joint which might be interpreted as an arthritic change. This was not very marked and I didn't list it as a definite diagnosis or impression. *589 He did have calcification in the bursa or the tendon. Other than this, I found nothing."
He stated that he could not tell from his examination whether the arthritic condition existed prior to September 20, 1962, or not.
Finally, Dr. Nix said that 80% of the 25 to 30% permanent partial disability which he found claimant to have suffered should be ascribed to the accidental injury, and only twenty percent to the preexisting condition.
He further said:
"I base that opinion on the fact that he did present clinical evidence of having had a subdeltoid bursitis, though he did not give a history of this. I did find evidence of it by x-rays."
In reviewing the factual findings of the Workmen's Compensation Commission, the role of the circuit court is appellate and that court must accept as established all those facts found by the Commission which the evidence proved, or reasonably tended to prove, or which might have been reasonably inferred therefrom. The circuit court was in error in its decision that there was no substantial evidence to support the findings of the Commission.
It is argued by appellee and cross-appellant, Loomis, that the Attorney Referee and the Commission, as well as the circuit court, were in error in relating the injury to loss of use of the arm, a scheduled member, and that compensation should have been awarded upon the basis that claimant had been totally and permanently disabled. In support of this contention he cites Jewell v. Wood, 130 So.2d 277 (Fla. 1961) in which the Supreme Court of Florida held that a rupture of the long head of the biceps tendon necessarily results in an injury to the shoulder area, and distinguishes it from an injury to the arm. The Court held that the disability at the shoulder area produced an injury to the body as a whole and not necessarily to the arm.
In response to that argument, appellants cite Paulson v. Muskegon Heights Tile Co., 371 Mich. 312, 123 N.W.2d 715 (Mich. 1962), in which the Michigan Court held, in effect, that a statutory schedule of payments for the loss of use of the legs was applicable although the injury had been to another part of the body, if the result was loss of use of the legs.
Appellant also cites Aetna Casualty & Surety Co. v. Moore, 361 S.W.2d 183 (Tex. 1962). This case involved a painter who was injured in falling from a ladder. He designated the actual blow as being to his shoulder and back. The Texas Court held that where an injury results in the impairment of a scheduled member, compensation is to be awarded in accordance with that provided for injury to the scheduled member, notwithstanding the fact that it is not the scheduled member which directly received the blow.
We think the better rule in compensation cases involving traumatic physical injury is that the result of the injury, shown by the facts in the particular case under review, must be looked to, and that the point of impact upon the body, or the location of the traumatic injury should not necessarily be controlling. In other words, the result of the blow to the shoulder might result only in the loss of the use of an arm, a scheduled member, as in this case; or it may result in a back or neck injury, in which case, the compensation would be payable upon the basis of the result. Here, there was no medical finding of fracture or tear, and the only explanation offered by the doctors for the pain, which claimant said he experienced, aside from bursitis, was mild or sub acute tenosynovitis, which Dr. Nix explained as being an inflammation of the biceps tendon as it passes through the biceps groove in the humerous of the shoulder. The biceps is, of course, the large flexor muscle of the upper arm.
*590 The Attorney Referee, the Full Commission and the Circuit Court were correct in relating the injury to the loss of use of the arm, a scheduled member.
The interpretation of the evidence and the resolution of ambiguities and apparent conflicts in it were matters peculiarly within the province of the Workmen's Compensation Commission as the trier of facts.
The Commission has reasonable discretion in apportioning compensation. Southeastern Const. Co. v. Dodson's Dependents, 247 Miss. 1, 153 So.2d 276 (1963). In that case the Court said:
"Its conclusion on the degree of contribution is a determination of a question of fact, and will not be changed unless it is not supported by substantial evidence, or is manifestly wrong." (247 Miss. at 15, 153 So.2d at 283.)
The following has recently been held by this Court in the case of Contract Trucking Co. v. May, 183 So.2d 488 (Miss. 1966):
"This Court has held many times that the Commission is the trier of fact and where there is substantial evidence to support its decision, this Court will not disturb the findings and order of the Commission. Bates v. The Merchants Company and New Amsterdam Casualty Company, 249 Miss. 174, 161 So.2d 652 (1964).
"The same ruling would apply to the Circuit Court which acts also in a purely appellate capacity in Workmen's Compensation cases. California Eastern Airways, Inc., et al. v. Neal, 228 Miss. 370, 87 So.2d 895 (1956).
"The sole and only question then before this Court, as it should have been before the Circuit Court, is whether or not the decision and order of the Commission is supported by substantial evidence.
"We find that the unanimous decision and order of the Commission is not only supported by substantial evidence, but by a clear preponderance of the credible evidence and, therefore, that the judgment of the Circuit Court should be reversed and the decision and order of the Workmen's Compensation Commission reinstated."
The judgment of the Circuit Court is reversed, and the order of the Workmen's Compensation Commission is reinstated.
Reversed and order of Workmen's Compensation Commission reinstated.
GILLESPIE, P.J., and PATTERSON, INZER and ROBERTSON, JJ., concur.