361 So.2d 995 (1978)
Sidney M. RICHEY
v.
CITY OF TUPELO and United States Fidelity & Guaranty Company.
No. 50505.
Supreme Court of Mississippi.
August 23, 1978.
Rehearing Denied September 13, 1978.
Parker, Averill, Funderburk & Butts, Paul S. Funderburk, Roy O. Parker, Tupelo, for appellant.
Bramlett, Mounce & Soper, Paul Kent Bramlett, Tupelo, for appellees.
Before SMITH, P.J., and BROOM and LEE, JJ.
LEE, Justice, for the Court:
This is an appeal by Sidney M. Richey from a judgment of the Lee County Circuit Court affirming an order of the Workmen's Compensation Commission finding that he had sustained a fifty percent (50%) permanent partial disability to his right upper extremity and directing the City of Tupelo, employer, and United States Fidelity & Guaranty Company, carrier, to pay compensation for a period of one hundred (100) weeks at the rate of fifty-six dollars ($56.00) per week. The only question involved is the extent of claimant's disability. He contends:
(1) That his injury was to the shoulder, a non-scheduled member and his resultant disability should have been related to the body as a whole.
(2) The Workmen's Compensation Commission and the Lower Court erred in limiting his disability to a fifty percent (50%) loss of use of his right arm.
*996 Appellant was employed as a fireman by the Tupelo Fire Department. On October 20, 1973, while engaged in putting out a fire, he fell and injured his right shoulder. Three (3) days later, he was examined by Dr. Lee Milford, an orthopedic surgeon. At that time, he was complaining of pain in the right shoulder and was unable to move it. Richey had normal forward and backward motion, extension and rotation of his arm, but was unable to move the elbow away from his body in the motion called "abduction." He could not hold it in that position when the arm was forced there. Dr. Milford diagnosed claimant's condition as a tear of the shoulder cuff, or rotating muscles of the shoulder. The doctor recommended and performed surgery. In his opinion, appellant reached maximum medical improvement on October 21, 1974, he could not do any climbing, heavy lifting or use heavy equipment with his right arm, and he suffered a thirty percent (30%) disability to the shoulder, which, reduced by fifty percent (50%), would result in a fifteen percent (15%) disability of the body as a whole. Dr. Milford suggested that appellant try to find some work he could do which did not involve climbing and heavy use of his right arm.
Dr. Robert P. Christopher, a specialist in the field of physical medicine and rehabilitation, serving as a full professor and Chief of the Division of Physical Medicine and Rehabilitation, University of Tennessee, examined appellant for medical evaluation on August 5, 1975. He found that appellant had severe limitation of external rotation, flexion, abduction and motion in his right arm, and that the prognosis for further improvement was very limited. In his opinion, appellant had a thirty-seven percent (37%) permanent impairment of the right shoulder which converts to twenty-two percent (22%) disability of the body as a whole. Even though appellant complained of an injury to his low back, neither Dr. Christopher nor Dr. Milford related his back condition to the injury of October 20, 1973.
Dr. William M. Jenkins, Ph.D. and an Associate Professor and Coordinator of the Undergraduate and Graduate Programs in Rehabilitation Counseling at Memphis State University, testified in substance that claimant was not in a state of employment readiness and that there were no jobs he could then perform, as a result of the injury.
Richey testified that, as a fireman, he had to operate a pump, drive a truck, be a hold man and oil man, climb ladders, put up ladders, and do anything else that was required to be done. This work also involved heavy lifting. Prior to working in the fire department, he drove a tractor and truck for the City Street Department two years. On his off days at the fire department, he operated farm equipment. He can no longer do simple things like mowing the yard and putting in lightbulbs; he is righthanded and cannot do anything unless he can do it with his left hand and arm; he cannot write lefthanded; he drives his car some, but it has power steering and he drives it mostly with his left hand and arm; because of his education, he is extremely limited in the jobs other than that of a common laborer; and he cannot do any type work requiring the use of his right arm.
The administrative judge found that appellant was temporarily totally disabled from October 20, 1973, to October 20, 1974, and that he sustained a permanent partial disability in the amount of fifty percent (50%) to his right upper extremity which entitled him to compensation for a period of one hundred (100) weeks at fifty-six dollars ($56.00) per week. The Commission affirmed the order of the administrative judge, Richey appealed, and the Circuit Court affirmed the Commission's order.

I.
Was appellant's injury to a non-scheduled member (shoulder) and should his disability have been related to the body as a whole?
Mississippi Code Annotated Section 71-3-17 (1972) provides the following:
"(c) Permanent partial disability: In case of disability partial in character but permanent in quality, the compensation *997 shall be sixty-six and two-thirds percent (66 2/3%) of the average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this chapter, which shall be paid following compensation for temporary total disability paid in accordance with subsection (b) of this section, and shall be paid to the employee as follows:
Member lost Number weeks Compensation
(1) Arm 200 "
The evidence is uncontradicted that appellant's injury of October 20, 1973, affected only the right arm and right shoulder and no other part of his body. The shoulder injury does not extend into his cervical, lumbar or thoracic area, but only into his arm. Dr. Lee Milford, the surgeon who operated on claimant, stated as to whether this is a shoulder injury as opposed to an arm injury:
"[W]e are going to have to define what each of us mean by `arm' and each of us mean by our own definition of `shoulder.' I mean by `shoulder' a joint which has made up a part of the arm which is inclusive when you say `right upper extremity,' this leaves no doubt that you're talking about the elbow, wrist, hand, etc."
In Walters Bros. Builders v. Loomis, 187 So.2d 586 (Miss. 1966), Loomis, a painter, fell from a ladder onto his shoulder resulting in an injury. Medical testimony indicated that upon reaching maximum medical recovery, he had a permanent disability from twenty-five percent (25%) to thirty percent (30%) in the right upper extremity. The Court said:
"We think the better rule in compensation cases involving traumatic physical injury is that the result of the injury, shown by the facts in the particular case under review, must be looked to, and that the point of impact upon the body, or the location of the traumatic injury should not necessarily be controlling. In other words, the result of the blow to the shoulder might result only in the loss of the use of an arm, a scheduled member, as in this case; or it may result in a back or neck injury, in which case, the compensation would be payable upon the basis of the result. Here, there was no medical finding of fracture or tear, and the only explanation offered by the doctors for the pain, which claimant said he experiences, aside from bursitis, was mild or sub acute tenosynovitis, which Dr. Nix explained as being an inflammation of the biceps tendon as it passes through the biceps groove in the humerous of the shoulder. The biceps is, of course, the large flexor muscle of the upper arm.
The Attorney Referee, the Full Commission and the Circuit Court were correct in relating the injury to the loss of use of the arm, a scheduled member." 187 So.2d at 589-590.
Substantial evidence, in fact, the great weight of evidence here, indicates that appellant sustained an injury to the shoulder with functional loss affecting only the right arm. That injury must be limited to the schedule which includes the arm. Therefore, the judgment of the Circuit Court and the Commission is affirmed on this question.

II.
Did the Commission and the Lower Court err in limiting appellant's disability to a fifty percent (50%) loss of use of his right arm?
Dr. Milford estimated the permanent partial disability to appellant at thirty percent (30%) of the right extremity, and Dr. Christopher estimated his disability at thirty-seven percent (37%) of the right extremity. The Commission found that claimant suffered a fifty percent (50%) disability of the right extremity.
The lay testimony is undisputed that appellant is unable to do anything involving the use of his right arm. In I. Taitel & Son v. Twiner, 247 Miss. 785, 157 So.2d 44 (1963), this Court held that where the injured employee had suffered approximately twenty percent (20%) permanent disability to the body as a whole, according to the *998 medical testimony, the evidence supported a finding that she was one hundred percent (100%) totally and permanently disabled within the meaning of the act. In Tyler v. Oden Constr. Co., 241 Miss. 270, 130 So.2d 552 (1961), claimant suffered an injury to his leg and foot causing a medical disability of approximately fifty percent (50%). His work involved heavy manual labor. He could not perform work such as he had done previous to the injury. This Court reversed the order holding that he had sustained a fifty percent (50%) loss of use of the leg for wage-earning purposes and directed that judgment be entered for one hundred percent (100%) disability for the scheduled member. See also Modern Laundry, Inc. v. Williams, 224 Miss. 174, 79 So.2d 829 (1955); and M.T. Reed Construction Co. v. Martin, 215 Miss. 472, 61 So.2d 300 (1952).
We are of the opinion that the order of the Commission is not supported by substantial evidence and that the great weight of the evidence indicates that appellant has lost one hundred percent (100%) use of his right upper extremity for wage-earning purposes. Consequently, the judgment of the lower court and the order of the Commission are reversed and judgment is entered here fixing appellant's permanent partial disability at one hundred percent (100%) loss of use of the right upper extremity and allowing permanent compensation benefits for two hundred (200) weeks.
Appellees argue here that appellant has not sought employment of any kind since the date of his injury and that under Coulter v. Harvey, 190 So.2d 894 (Miss. 1966), he is not entitled to any award of permanent disability benefits. However, appellees did not cross-appeal and we do not consider that question. Moreover, the evidence is undisputed that appellant's shoulder is still disabled, is not likely to improve in the future, and that his disability has not subsided as was the situation in Coulter, supra.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.