905 So.2d 661 (2004)
CIVES STEEL COMPANY PORT OF ROSEDALE and Employers Insurance of Wausau, a Mutual Company, Appellants
v.
Walter WILLIAMS, Jr., Appellee.
No. 2003-WC-00860-COA.
Court of Appeals of Mississippi.
June 1, 2004.
Rehearing Denied August 10, 2004.
*663 Robert F. Stacy, Christine B. Tatum, Oxford, attorneys for appellants.
William R. Striebeck, Greenville, attorney for appellee.
Before KING, C.J., BRIDGES, P.J., and CHANDLER, J.
BRIDGES, P.J., for the Court.
¶ 1. Walter Williams, Jr. began a worker's compensation claim against his former employer Cives Steel Company after an injury to his left foot. An administrative hearing was held on this matter in October of 2000 in Bolivar County. The record was held open and another hearing was held in August of 2001. The administrative judge issued the following ruling:
A. Williams was entitled to temporary total disability benefits at the rate of $270.67 per week from November 12, 1997 to May 6, 1999, with proper credit for wages earned by Williams and compensation paid by Cives during this period;
B. Williams was entitled to permanent partial disability benefits at the rate of $100.67 per week for 450 weeks beginning May 6, 1999 pursuant to Mississippi Code Annotated section 71-3-17(c)(25)(rev.2000), with proper credit for compensation paid by Cives during this period;
C. Williams was entitled to all medical services and supplies required by the nature of his injury and in the process of his recovery as provided in Mississippi Code Annotated section 71-3-15 (rev.2000) and the Medical Fee Schedule;
D. A ten percent penalty on all untimely paid installments of compensation pursuant to Mississippi Code Annotated section 71-3-37(5)(rev.2000) and interest at the legal rate.
¶ 2. Cives filed a petition for review and the ruling of the administrative judge was reviewed by the Full Commission. In July of 2002 the Commission entered an order affirming the decision of the administrative judge. From this ruling Cives appealed to the Circuit Court of Bolivar County. Oral arguments were held in March of 2003 and the court affirmed the Commission's decision as to all but one issue. Cives now appeals to this Court on the following issues:

*664 STATEMENT OF THE ISSUES
I. WHETHER THE CIRCUIT COURT OF BOLIVAR COUNTY ERRED IN AFFIRMING THE COMMISSION'S DETERMINATION THAT WILLIAMS SUSTAINED A PERMANENT PARTIAL DISABILITY TO THE BODY AS A WHOLE INSTEAD OF PERMANENT PARTIAL DISABILITY TO A SCHEDULED MEMBER.
II. WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE COMMISSION'S DETERMINATION THAT WILLIAMS WAS ENTITLED TO PERMANENT DISABILITY BENEFITS EXCEEDING THE 10% MEDICAL DISABILITY RATING.
III. WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE DECISION OF THE COMMISSION SINCE INCORRECT LEGAL STANDARDS WERE APPLIED TO THE EVIDENCE PRESENTED AND THE FACTUAL FINDINGS WERE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

FACTS
¶ 3. Williams began working for Cives in 1992 as an industrial painter. This job required Williams to paint steel beams using an air sprayer and to carry two five gallon buckets of paint to the sprayers, while stepping over skids and moving beams several times during the process. William's work area had concrete flooring and his hours were from 3:30 p.m. to 2:00 a.m.
¶ 4. In November of 1997, while painting, a 1,300 pound I-beam fell on Williams' left foot. Williams had two surgeries to treat his injury, one in April of 1998 and the other in December of 1998. Between the surgeries he continued to work "light duty" at Cives and after the second surgery he was demoted from painter to a painter's helper due to his long absence. Working as a helper Williams still spent long hours on his left foot and began to experience sharp pain and swelling for about two months until his doctor referred him to a specialist. In September of 1999 the specialist restricted Williams' duties to not allow Williams to stand for more than sixty consecutive minutes. Cives would not allow Williams to return to work under these conditions. Williams is still under the care of a pain management specialist taking several pain medications a day.
¶ 5. In August 2000 Williams began to drive and deliver packages for Federal Express on a part-time basis. For his work with Federal Express Williams had to switch from a manual transmission to an automatic one because he had difficulty using the clutch with his injured foot. At Federal Express, Williams makes $66 each day he works and on average he works about twenty-six days for every forty five days. Williams also works mowing three or four lawns a week during the summer months making approximately $100 a week.

ANALYSIS
¶ 6. The well-settled standard of review for workers' compensation cases is that "[t]he Commission is the ultimate fact finder." Hardin's Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1264 (Miss.1990). "Accordingly, the Commission may accept or reject an administrative judge's findings." Id. In the case sub judice, the Mississippi Workers' Compensation Commission affirmed the order of the administrative law judge after thoroughly studying the record and the applicable law. Our standard of review is set forth in Delta CMI v. Speck:
Under settled precedent, courts may not hear evidence in compensation cases. Rather, their scope of review is limited *665 to a determination of whether or not the decision of the commission is supported by substantial evidence. If so, the decision of the commission should be upheld. The circuit courts act as intermediate courts of appeal. The Supreme Court, as the circuit courts, acts as a court of review and is prohibited from hearing evidence or otherwise evaluating evidence and determining facts. "[W]hile appeals to the Supreme Court are technically from the decision of the Circuit Court, the decision of the commission is that which is actually under review for all practical purposes."
As stated, the substantial evidence rule serves as the basis for appellate review of the commission's order. Indeed, the substantial evidence rule in workers' compensation cases is well established in our law. Substantial evidence, though not easily defined, means something more than a "mere scintilla" of evidence, and that it does not rise to the level of "a preponderance of the evidence." It may be said that it "means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred."
586 So.2d 768, 772-73 (Miss.1991) (citations omitted).
¶ 7. "This Court will reverse an order of the Workers' Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence." Mitchell Buick, Pontiac & Equip. Co. v. Cash, 592 So.2d 978, 980 (Miss.1991) (citations omitted). Therefore, we must examine the record and be satisfied that substantial evidence existed upon which the Commission could base its decision.
I. WHETHER THE CIRCUIT COURT OF BOLIVAR COUNTY ERRED IN AFFIRMING THE COMMISSION'S DETERMINATION THAT WILLIAMS SUSTAINED A PERMANENT PARTIAL DISABILITY TO THE BODY AS A WHOLE INSTEAD OF PERMANENT PARTIAL DISABILITY TO A SCHEDULED MEMBER.
II. WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE COMMISSION'S DETERMINATION THAT WILLIAMS WAS ENTITLED TO PERMANENT DISABILITY BENEFITS EXCEEDING THE 10% MEDICAL DISABILITY RATING FOR THE SCHEDULED MEMBER.
¶ 8. The first and second issues before the court will be considered together since the second issue is actually a continuation of the first.
¶ 9. The administrative judge based her decision to grant permanent partial disability benefits to the body as a whole on the evidence given by Dr. Mark Wolgin, Williams' primary treating physician. Dr. Wolgin performed both surgeries to fuse Williams' foot and assessed the injury to Williams as 7% permanent impairment to the body. Dr. Wolgin used a "stand alone" rating which could not be subdivided into the leg or foot because it altered his gait and affected the body as a whole. The findings of Dr. Wolgin that the disability affected the body as a whole were supported by seeing Williams limp both during the testimony and on surveillance video-tape. The administrative judge chose not to rely on the evidence given by Dr. Rahul Vohra, who was brought in to do an independent evaluation of Williams and determined he had a 10% disability rating relating solely to the left foot.
¶ 10. The administrative judge cites to Richey v. City of Tupelo, 361 So.2d 995 *666 (Miss.1978). In Richey, the Mississippi Supreme Court relied on an older case of Walters Bros. Builders v. Loomis, 187 So.2d 586 (Miss.1966), where "the point of impact, upon the body, or the location of the traumatic injury" was not the controlling factor. Richey, 361 So.2d at 997. In both Richey and Loomis, the court examined the resulting effect of an injury not just the initial location of the injury. In both cases the court found that no medical explanation given was sufficient to prove the injury affected the body as a whole.
¶ 11. Loomis and Richey continued a line of cases which considered the claimant's medical impairment in conjunction with his occupational disability or industrial impairment. Smith v. Jackson Construction Co., 607 So.2d 1119, 1126 (Miss.1992). In many cases applying these rulings, the occupational disability would exceed the medical impairment. These decisions relied heavily on a prior Mississippi Supreme Court ruling in M.T. Reed Construction Co. v. Martin, 215 Miss. 472, 61 So.2d 300 (Miss.1952), which held that regardless of being permanently and totally occupationally disabled a claimant was limited to compensation for the maximum number of weeks allowed for his injury to the scheduled member. Smith at 1126.Id.
¶ 12. However, M.T. Reed was overruled in 1992 by Smith v. Jackson Construction Co., 607 So.2d 1119, 1126 (Miss.1992), and the holdings in Loomis and Richey are modified to the extent they are considered inconsistent. Smith holds that when a claimant suffers an injury covered under Mississippi Code Section 71-3-17(c) (Rev.2000), a permanent partial disability, but that injury results in a permanent loss of wage earning capacity consistent with Mississippi Code Section 71-3-17(a), permanent total disability, the latter section will apply and the claimant is not limited in the number of weeks and compensation prescribed by the former. Id. at 1128.
¶ 13. The administrative judge in this case, by relying on Richey, found that Williams had suffered both a medical impairment and an occupational disability, but in granting permanent partial disability under Mississippi Code Section 71-3-17(c)(25) (Rev.2000) found that loss of wage earning capacity under these facts was not to such an extent required under Mississippi Code Section 71-3-17(a) (Rev.2000), a permanent total disability.
¶ 14. The determination of the measure of compensation under Mississippi Code Section 71-3-17(c) is dependant on two factors; (1) "the degree of functional loss of use as demonstrated by the medical evidence, normally expressed as a percentage, and (2) the impact that the loss of function of the particular scheduled member has on the worker's ability to perform the normal and customary duties associated with her usual employment." Robinette v. Henry I. Siegal Co., 801 So.2d 739, 743 (Miss.Ct.App.2000). The Court in Robinette holds that when a claimant has an injury which affects his or her ability to perform their typical employment, and this percentage of disability is greater than the percentage of their actual injury, then the court is permitted to compute compensation based on the higher percentage. Id. The administrative judge in this case applied the 7% whole body percentage rather than the 10% scheduled member percentage which is proper.
¶ 15. Cives in its appeal claims no medical evidence was offered to prove the injury affected Williams' back as required under Richey to get compensation for an injury to the body rather than for just the scheduled member itself. However, this Court believes Cives is reading the Richey case too literally. In Richey, an absence *667 of medical finding of back or neck pain in conjunction with the injury to the claimant's shoulder was conclusive to only allow compensation for injury to the scheduled member. In the case at bar, Williams' injury was not to his shoulder but to his foot. This Court does not believe the requirements of medical findings are the same for injuries to the foot as they are for injuries to the shoulder.
¶ 16. The spirit of Richey required the claimant to offer medical proof of the injury manifesting its symptoms in an area other than the initial impact. For a shoulder an obvious area of this manifestation would be in the shoulder or neck. Williams did offer medical proof the injury to his foot affected his gait which is sufficient under Richey. Therefore, the decision of the administrative judge was not clearly erroneous and against the weight of the evidence; thus these issues on appeal are without merit.

III. WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE DECISION OF THE COMMISSION SINCE INCORRECT LEGAL STANDARDS WERE APPLIED TO THE EVIDENCE PRESENTED AND THE FACTUAL FINDINGS WERE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 17. In its argument on this issue Cives does not state specifically which applications of law were incorrect. Cives merely declares the "Commission's order was clearly based on erroneous application of law." Without an allegation of specific law that was misapplied, this Court will consider solely the issue of lack of evidential support.
¶ 18. The allegation by Cives that the order of the Commission is not supported by substantial evidence hinges primarily on its belief the computation of $100.67 in disability benefits is wholly arbitrary and capricious. The formula used for computing disability benefits is listed within the statute itself.
Other cases: In all other cases in this class of disability, the compensation shall be sixty-six and two-thirds percent (66-2/3 %) of the difference between his average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this chapter, and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the commission on its own motion or upon application of any party in interest. Such payments shall in no case be made for a longer period than four hundred fifty (450) weeks.
Miss.Code Ann. § 71-3-17(25)
¶ 19. Workers' compensation benefits are computed based upon weekly wages not hourly. Williams's average weekly wages before the accident were stipulated as $471. The administrative judge decided Williams's average weekly wages after the accident were $320, which was derived from $80 a day four days a week. This amount is greater than $280 a week, Cives refers to which Williams received regardless of how much he works. Therefore, if the administrative judge had used the amount Cives requested Williams would receive more per week in disability.
¶ 20. Applying the formula, $320 is 67.94% of $471 meaning Williams had a 32.06% loss in wage earning capacity. Williams is entitled under the statute to 66.66% of the amount of his loss in earnings multiplied by his pre-injury average weekly earnings:
 $471 × 32.06% = $151.0026 × 66.66%
 = $100.658
*668 This amount is one cent less than the amount awarded by the administrative judge and this Court does not find that a one cent difference due to a rounding error is either arbitrary or capricious. Therefore, the issue brought forth by Cives is without merit.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., THOMAS, IRVING, MYERS, AND CHANDLER, JJ., CONCUR. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE AND GRIFFIS, JJ.
SOUTHWICK, P.J., Dissenting.
¶ 22. With respect for the majority, I believe that there is error in addressing the merits of this appeal. Since the circuit court remanded to the Commission for additional evidentiary proceedings, coming to this Court first was an unauthorized interlocutory appeal. I believe that the precedents that require this result should be reconsidered, but that is a role for higher authority. Secondly, I address the merits because of what appears to be an atypical conversion of an injury to a foot into an injury affecting the whole body. Based on the evidence in the record, though, I do not find error.

1. Interlocutory appeal
¶ 23. This is an appeal from a decision by the circuit court to remand to the Commission for additional evidence. That first level appellate court found that more testimony was needed in order to make the calculations for temporary partial disability benefits under a recent opinion of this Court. Howard Indus., Inc. v. Robinson, 846 So.2d 245 (Miss.Ct.App.2002).
¶ 24. I find that this appeal presents a jurisdictional defect that we should note on our own motion. In some situations, if a court remands to the Commission, or the Commission remands to the administrative judge, that is an interlocutory order. When the Commission remands to an administrative judge for the taking of more evidence, that is not a final order subject to appeal. Southern Natural Resources, Inc. v. Polk, 388 So.2d 494, 495 (Miss.1980), citing Miss.Code Ann. § 71-3-51 (Rev.2000) (permitting appeals only from a "final award"). That is because the final arbiters at the administrative agency have not yet reached a decision on the claim.
¶ 25. On the other hand, a circuit court's remand to the commission to reopen a case was held in 1962 to be a properly appealed final order:
The Commission's `final award' dismissing the claim was the judgment, the correctness of which was the subject of the appeal to circuit court. The circuit court could (1) affirm, and remand if necessary, or (2) reverse and enter such judgment or award as the Commission should have entered, and remand if necessary. Code Section 6998-26 [now § 71-3-51]. When the circuit court finally disposed of the appeal from the Commission's final award by reversing the award and remanding the case to the Commission, the judgment of the circuit court was final and appealable.
L.B. Priester & Son, Inc. v. Bynum, 244 Miss. 185, 195-96, 137 So.2d 907, 908 (1962).
¶ 26. However, Priester was overruled in Wilson v. Mississippi Employment Sec. Comm'n., 643 So.2d 538, 540 (Miss.1994) (recognizing what was called the implicit overruling in Bickham v. Dept. of Mental Health, 592 So.2d 96 (Miss.1991)). Priester was found to be in error in allowing an *669 appeal from a circuit court order sending a case back to the Workers' Compensation Commission "to allow the employer and carrier to present evidence before any final determination was attempted." Id., citing Priester, 137 So.2d at 908. The facts of Wilson could have been distinguished from those in Priester. In Wilson, the circuit court had remanded the claim to the Mississippi Employment Security Commission (MESC) because the "record was insufficient to make a decision as the employer, Foodmax, failed to produce evidence to support the precise grounds for the discharge" of the claimant. Id. The Supreme Court said that the circuit court's remand for further fact-finding was not a final judgment and the appeal from that remand was, therefore, interlocutory. Wilson, 643 So.2d at 539. That is understandable since the circuit court had not ruled finally on whether Wilson had validly been discharged from his employment. The interlocutory decision was made when the circuit court stepped back from rendering judgment because of alleged record inadequacies. Instead it requested more fact-finding. The circuit court in essence held that the MESC process may have led to a proper decision or an improper one. The court could not decide which it was, until the additional evidence was taken.
¶ 27. What the Wilson court did not conclude but would have been logical, is that the nature of the circuit court's decision in Priester was distinguishable from the one in Wilson. In Priester, the circuit court's decision was arguably final since the court reached the merits of the appeal and found that it was error for the Commission to refuse to reopen the case. The Priester circuit court did not state that based on the current record that it was unable to rule on the validity of the agency's refusal to reopen. It could and did rule. In Wilson, however, the circuit judge stated that he was unable to rule on the merits of the final action of the agency. Until the judge received a record with more evidence, whether the claim should have been granted or denied remained an open question.
¶ 28. In Wilson, the circuit judge as the first level appeals court had not made a final decision on the merits presented; in Priester, the circuit judge had done so.
¶ 29. What occurred in Priester is much like what occurs when this Court reviews a trial court decision refusing to grant a new trial. The trial court makes a final decision on the merits to refuse to reopen the proceedings. If this first level appeals court decides the refusal was error, that too is a final decision on the merits presented to us, and we have found error. It would not be an interlocutory matter for the Supreme Court to issue a writ of certiorari to consider whether we erred in requiring the trial court to reopen the proceedings for a new trial. Neither, in my view, would it be interlocutory for this Court to resolve on the merits an appeal from the circuit court's overturning of the Commission's refusal to reopen, which was the situation in Priester.
¶ 30. The case relied upon in Wilson is consistent with this. Bickham, 592 So.2d at 96. In one of the two consolidated cases that led to the Bickham opinion, the appeal had been from a Workers' Compensation Commission order "referring an old claim sought to be reopened to the administrative law judge for determining whether the claimant had experienced a change of conditions" justifying the reopening; in the other the Commission reopened a claim upon which a settlement had been made, and "referred the matter to the administrative law judge for a hearing to determine whether there had been a change in the claimant's condition" *670 so as to justify reopening. Bickham, 592 So.2d at 97. In neither of those cases was there final agency action. An administrative judge is not a lower court to the Commission as a trial court is to an appeals court. Instead, the judge is an agent of the Commission, granted the Commission's authority to rule on a claim. When the Commission receives an appeal from an administrative judge for review, the Commission becomes the fact-finder. Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1245 (Miss.1991).
¶ 31. Until the Commission is satisfied with the work of its administrative judge assigned a claim, there is no final ruling on the claim that can emerge into the process of judicial review. To the contrary, a decision by a circuit court sitting as a first level appeals court that completely disposes of the merits, including finding that the merits were improperly decided and remanding to the Commission, is a final decision. What is distinguishable and which was found to be interlocutory in both Bickham and Wilson is a remand to an administrative agency for clarification or additional evidence gathering. In neither case was the agency found to have been in error, but in both cases the court was unable to give a final ruling until additional proceedings were conducted.
¶ 32. Judicial efficiencies might make it desirable in both a Bickham situation and a Priester one, that the agency complete all action that might be ordered prior to final judicial review. Balanced against that would be the inefficiencies in the agency process of requiring potentially useless additional proceedings that a still higher court might reject as having been unnecessary, plus returning the parties to the beginning of the multi-level appeal process. Some of those policy decisions have already been made, though, by the policy-making branch of government. The legislature granted a right to appeal "from any final judgment of a circuit or chancery court in a civil case, not being a judgment by default, by any of the parties or legal representatives of such parties. . . ." Miss.Code Ann. § 11-51-3 (Rev.2002).
¶ 33. Granting a right to appeal is a matter of legislative discretion; setting the procedures for appeal has been identified as an area of judicial discretion. Fleming v. State, 553 So.2d 505, 506 (Miss.1989); Newell v. State, 308 So.2d 71, 76 (Miss.1975). The legislature has allowed appeals from all final judgments of circuit courts. "Final" then becomes the vital word. For purposes of finality to take an appeal, the order must dispose of all issues before the court. City of Jackson v. Jackson Oaks Ltd. Partnership, 792 So.2d 983, 985 (Miss.2001). More simply, the Supreme Court has said that a final judgment of a circuit court in a civil case means a "judgment adjudicating the merits of a controversy." Hindman v. Bridges, 185 So.2d 922, 923 (Miss.1966). It may not be final for res judicata purposes, since further appeals or remands may occur. But once a specific court has resolved all issues before it in its final decree, that is the finality needed for taking an appeal. Under that view, Priester was final and Wilson was not.
¶ 34. Under my interpretation of finality, the circuit court's remand in the present case for additional fact-finding by the Commission on the question of partial permanent disability was final. The circuit judge's order found that the Commission had erred in awarding total disability benefits for the period that the claimant was working with a partial disability. The court ordered a remand "to the Commission to reopen the case for additional testimony necessary to make the Howard Industries determination." The decision finally disposed of all issues before it, even if one of those dispositions was that *671 the Commission had to try again. Now, if the appellant before us was arguing that this remand was erroneous and should itself be reversed, the finality for appeal purposes of that remand order would seem more definite. Here, though, both parties agree that the Commission did not comply with the manner of computing benefits for a period of partial disability. I do not find the distinction to make a difference. The parties' satisfaction at the time of filing their briefs does not make the order less final than it was on the day that it was entered. The circuit judge was asked to rule on a variety of things, including whether the computation of benefits was correct under Howard Industries. The court ruled finally on every issue and left nothing open.
¶ 35. Nonetheless, I find that we must accept Wilson on its own terms. It did not distinguish Priester, and we should hold that the present appeal is interlocutory. It is true that even if the circuit court order is interlocutory, discretionary review may be sought. A statute authorizes court rules to permit appeals "from interlocutory or final orders of trial courts and administrative boards and agencies...." Miss.Code Ann. § 9-3-61 (Rev. 2002). If the circuit court's order was interlocutory as interpreted in Wilson, Appellate Rule 5 would permit a request for an interlocutory appeal.[1] We have previously held that so long as the request for an appeal is made within the fourteen days for an interlocutory appeal, the fact that the appellant did not label the appeal as interlocutory could be waived by the Court. M.R.A.P. 5(a); Hobgood v. Koch Pipeline Southeast, Inc., 769 So.2d 838, 841 (Miss.Ct.App.2000). In the present case, the notice of appeal was filed and docketed on April 18, 2003, more than fourteen days after the judgment was filed and docketed on March 24, 2003.
¶ 36. I therefore reluctantly, and obviously laboriously, conclude that under existing caselaw, the decision by the circuit court to remand made the ruling on the appeal interlocutory. We should dismiss the appeal and the proceedings should continue at the Commission.

2. Merits
¶ 37. The Commission issued its usual form of order to indicate agreement with the administrative judge. In such an order the commission states that it "heard the arguments on behalf of the parties and having thoroughly studied the record and the applicable law," it affirms the identified decision. I do not take issue with this format, as an administrative agency in reviewing the decisions of one of its judges need not restate anything with which it agrees. What it means, though, is that the reasoning must be taken to be that expressed *672 in the administrative judge's decision.
¶ 38. The administrative judge found that a treating physician was correct to consider the claimant's injuries as being to the whole body since he now had a limp. What I find has occurred is that the administrative judge has established as a legal principle under workers' compensation law that a functional loss to the whole body is shown by proof of a limp. Superficially that appears, well, superficial. The feet are what we stand on. Certain kinds of injuries to feet and legs will as a matter of course affect how the rest of the body appears as it moves or stands on the injured members. Appearance is not the same as a compensable impact.
¶ 39. The source of the whole body injury conclusion was one of the physicians. Dr. Wolgin reached these conclusions, accepted by the Commission when it affirmed the administrative judge:
the patient would not qualify for any particular rating based on range of motion since he has full range of his foot and ankle on the left. However, since he has some mild antalgia and limps in the exam room, he would qualify for 7% whole person impairment as per [Guides] to the Evaluation of Permanent Injury, American Medical Association, 4th Edition, Table 36, Page 76. This is a stand alone rating and is not subdivided into foot or lower extremity components.
¶ 40. Two supplemental notes should be made first. The "antalgia" mentioned in the quotation is a medical term for a difficulty in walking, or "gait difficulty." Guides to the Evaluation of Permanent Impairment, at 75. Secondly, this medical reference book used by Dr. Wolgin describes what is required for the lowest level of whole body impairment from antalgia, which is the 7% level that was identified for this claimant: "Antalgic limp with shortened stance phase and documented moderate to advanced arthritic changes of hip, knee or ankle." Id., Table 36, at 76. I found nothing in Dr. Wolgin's records that "documents" any arthritic changes. However, in context it appears that the Guides conclude that the antalgia  the alteration of gait  inevitably causes arthritis. The constant adjustment of the body to the fused foot during walking will generate the arthritic reaction. That at least is my lay interpretation. The fusion is permanent, so the antalgia is as well.
¶ 41. Not only must there be a medical impairment, though, but that must translate into a permanent loss of wage-earning capacity since this is an award based on an injury to the whole body. Whether the administrative judge's conclusions on that, adopted by the Commission, are supported by evidence is something that we should not reach since this appeal is not properly before us.
LEE AND GRIFFIS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Less clear is the basis for interlocutory appeal from administrative bodies. It has been argued that such appeals are approved by the court rule that circuit courts may "hear and determine all motions, appeals or other applications" made to the court. URCCC 2.02, discussed in Bradley and Thompson, "Workers' Compensation Law" § 76:173, in 9 ENCYCLOPEDIA OF MISS. LAW (Jackson & Miller, ed.2002) at 385. A different rule provides that the "time and manner for the perfecting of appeal [to circuit court] from lower authorities shall be as provided by statute." URCCC 5.02. Whether the taking of an interlocutory appeal should be considered a matter of timing might be less than certain, but also uncertain is whether the authority to grant an interlocutory appeal from an agency is encompassed within the power to "determine" all motions and appeals. A court always has jurisdiction to determine whether it has jurisdiction. Florida Dept. of State v. Treasure Salvors, Inc., 458 U.S. 670, 681 n. 14, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982). The power to determine may require always saying "no." The Court's right to create an interlocutory appeal rule exists; a more explicit one for agencies is needed.