822 So.2d 1050 (2002)
FOAMEX PRODUCTS, INC. and the Insurance Company of the State of Pennsylvania, Appellants,
v.
Sandra SIMONS, Appellee.
No. 2001-WC-00049-COA.
Court of Appeals of Mississippi.
April 2, 2002.
Rehearing Denied June 25, 2002.
*1051 David B. McLaurin, Tupelo, attorney for appellants.
Duncan L. Lott, Bonneville, attorney for appellee.
Before BRIDGES, P.J., LEE, and CHANDLER, JJ.
CHANDLER, J., for the court.
¶ 1. On September 30, 1996, the claimant in this case, Sandra Simons, filed a petition to controvert, describing a work related injury arising from her employment with Foamex Products, Inc. On June 19, 1999, a hearing was held before an administrative law judge who ordered that Simons was entitled to permanent partial disability benefits of $192.90 beginning July 16, 1997, and continuing for a period of thirty weeks as compensation for the injury to Simons's right upper extremity. She further ordered Foamex to make payment of $192.90 for an additional period of twelve weeks as compensation for the injury to Simons's left upper extremity.
¶ 2. On October 28, 1999, Simons appealed this order to the Workers' Compensation Commission. A hearing was held before the Full Commission on May 8, 2000. The Commission affirmed the order of the administrative law judge. Simons then appealed the Commission's decision to the Circuit Court of Lee County, Mississippi. The circuit court reversed the Commission's order and found that Simons had sustained permanent total disability.
¶ 3. Feeling aggrieved, Foamex filed this appeal and cites three issues as error. First, Foamex argues that the circuit court erred by failing to apply the substantial credible evidence standard of review. Next, Foamex argues that the lower court erred in finding that the Commission committed an error of law regarding total vocational disability. Finally, Foamex argues *1052 that the circuit court erred in finding that Simons could not engage in her usual occupation.

FACTS
¶ 4. Sandra Simons was employed by Foamex as a cushion assembler from April 1994 until October 1995, when she was terminated from her position. On August 29, 1994, Simons reported an onset of pain and numbness in her hands. These symptoms were eventually diagnosed as carpal tunnel syndrome.
¶ 5. Simons initially saw Dr. Grayden Tubb, who diagnosed chronic pain syndrome in her hands. Dr. Tubb referred Simons to Dr. Mitch Massey, a specialist at Tupelo Orthopaedics in Tupelo, Mississippi. Dr. Massey performed a right carpal tunnel release in September 1994, and a left carpal tunnel release in October 1994. He then performed a left trigger thumb release in March 1995. In January 1995, Dr. Massey began treating Simons for sensory hypethesia on the ulnar aspect of he ring and third finger. He indicated that this condition would create an impairment of five percent to her right upper extremity. In March 1995, Dr. Massey began treating Simons for tendinitis in her left thumb. Dr. Massey stated that the tendinitis was caused by the repetitive use of her hand. He operated on Simons's thumb in April 1995. Dr. Massey did not see the claimant again until January 1997 for complaints of symptoms related to her carpal tunnel syndrome. In May 1997, Dr. Massey performed nerve conduction studies which revealed moderate carpal tunnel on the left and moderate to severe carpal tunnel on the right.
¶ 6. During the course of Dr. Massey's treatment, Simons was referred by Foamex to Dr. William Geissler in Jackson, Mississippi. Dr. Geissler diagnosed Simons with ulnar abutment syndrome and tear of triangular fibre cartilage complex. He performed two surgeries to repair these conditions. He stated that the condition was not work related but may have been aggravated by the repetitive use of Simons's hands. With regard to Simons's carpal tunnel syndrome, Dr. Geissler performed new nerve conduction studies. He testified that based on the results of the tests, he gave Simons a four percent impairment rating to her right upper extremity.
¶ 7. During this same time, Simons was seen by the North Mississippi Medical Industrial Work Center where she received physical therapy and three functional capacity evaluations. The first evaluation was performed in 1995, the second in July 1996, and the last one in July 1997. The first capacity evaluation concluded that Simons was limited to employment that fit within the parameters of "sedentary work" as defined by the Dictionary of Occupational Titles. The second evaluation concluded that Simons could work in the light work level as defined by the Dictionary of Occupational Titles. The third evaluation repeated the results of the first and instructed that Simons could "work in some capacity" in the sedentary range.
¶ 8. Simons saw Dr. Laura Gray, physiatrist, in December 1998, for a claimant medical examination. Dr. Gray performed a physical examination and reviewed Simons's medical records. Based on Simons's subjective complaints of numbness, pain and swelling in both hands, Dr. Gray felt that Simons could no longer perform repetitive job activities. Dr. Gray stated that Simons had a permanent disability which would prevent her from doing any type of clerical typing or any activity that required motion of the wrist on a repetitive basis.
¶ 9. Simons saw Dr. John Brophy, a neurosurgeon, in January 1999, for an employer *1053 medical examination. Dr. Brophy diagnosed her with bilateral carpal tunnel syndrome. He concluded that she had a chronic right extensor arm and wrist pain. Dr. Brophy testified that he did not think that surgery would have been helpful. He gave Simons a permanent medical impairment rating of four percent to each upper extremity. Dr. Brophy acknowledged that these figures were less than AMA Guidelines suggested. He stated that he felt that routine carpal tunnel syndrome patients should return to work with no restrictions.
¶ 10. After her termination from Foamex, Simons worked for five days at a Hardee's fast food restaurant. She was forced to leave the job because of pain caused by repetitive motions required by the job. She then sought employment at three other businesses but was not hired. Simons saw a vocational counselor in December 1996. Job reports were issued to Simons in February 1997, January 1998, and May 1999. Simons testified that she contacted and applied with four of the six businesses on the January 1998 list but was unable to find employment. Simons began receiving social security disability in April 1998 and did not seek further employment after that time.

STANDARD OF REVIEW
¶ 11. Appellate review of compensation claims is a narrow one. The Mississippi Supreme Court has stated, "[t]hat the findings and order of the Workers' Compensation Commission are binding on the court so long as they are `supported by substantial evidence.'" Liberty Mut. Ins. Co. v. Holliman, 765 So.2d 564(¶ 6) (Miss. Ct.App.2000) (quoting Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss. 1994)). The Commission's order will be reversed only if the court finds that the order was clearly erroneous and contrary to the overwhelming weight of the evidence. Liberty Mut. Ins. Co., 765 So.2d at (¶ 6). "A finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act." J.R. Logging v. Halford, 765 So.2d 580(¶ 12) (Miss.Ct.App.2000). "Where no evidence or only a scintilla of evidence supports a Worker's Compensation Commission decision, this Court does not hesitate to reverse." Universal Mfg. Co. v. Barlow, 260 So.2d 827 (Miss.1972). This Court gives liberal construction to the compensation statutes and where a question may exist, this Court will often rule in favor of the claimant. Big 2 Engine Rebuilders v. Freeman, 379 So.2d 888, 889-90 (Miss.1980).

LAW AND ANALYSIS
¶ 12. We address all of Foamex's issues together as these issues are, to some degree, intertwined. Foamex argues that the trial court failed to follow the proper standard of review and erred in finding an error of law in the administrative judge's order. Foamex further argues that the circuit court erred in finding that Simons could not engage in her usual employment.
¶ 13. Under the existent case law, a claimant may allege a medical or functional impairment of a scheduled member, or an occupational or industrial impairment to the same. Alumax Extrusions, Inc., v. Wright, 737 So.2d 416(¶ 15) (Miss. Ct.App.1998). The former classification represents the actual physical infirmity while the latter is the functional or medical disability as it affects the claimant's ability to perform the duties of employment. Walker Mfg. Co. v. Butler, 740 So.2d 315 (¶ 44) (Miss.Ct.App.1998). Thus, a claimant *1054 with only a partial impairment to a scheduled member may establish, that for purposes of wage earning capacity, he is totally occupationally disabled. Alumax Extrusions, Inc., 737 So.2d at (¶ 15); Smith v. Jackson Const. Co., 607 So.2d 1119, 1125-28 (Miss.1992). If a claimant can establish that due to the partial loss of use of a scheduled member, he is unable to perform the substantial acts of his usual employment, the claimant is entitled to the same compensation as for total loss of use of his member. Richey v. City of Tupelo, 361 So.2d 995, 998 (Miss.1978).
¶ 14. The Commission found that Simons had sustained a fifteen percent "vocational loss" to her right upper extremity and a six percent "vocational loss" to her left upper extremity. The circuit court found that the Commission based its award upon functional disability rather than loss of industrial use. This finding is in error. In Owens v. Washington Furniture Co., 780 So.2d 643(¶ 11) (Miss.Ct.App. 2000), this Court considered vocational loss as synonymous with industrial loss. Although the circuit court erred in stating that the Commission made its decision based on functional disability, this error is not fatal. The circuit court was correct in holding that the Commission failed to correctly apply the controlling case law to this case.
¶ 15. The issue to be determined by this Court is whether Simons is able to perform the substantial acts of her usual employment. The record before us clearly indicates that both parties agreed that Simons is unable to return to her former position at Foamex. If such work is to be considered her "usual employment" then she is totally disabled under the holding of Richey. This Court discussed the meaning of usual employment in Meridian Professional Baseball Club v. Jensen, 1999-WC-02093-COA (¶ 10), ___ So.2d ___, 2000 WL 1499455 (Miss.Ct.App. Oct. 10, 2000). The Court stated that in order to determine what a claimant's usual employment was, we should look to the list of factors used by the court in McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 167 (Miss.1991), for determining wage earning capacity. Such factors include "the amount of education and training which the claimant has had, his inability to work, his failure to be hired elsewhere, the continuance of pain, and any other related circumstances." Meridian Professional Baseball Club v. Jensen, 1999-WC-02093-COA at (¶ 11); McGowan, 586 So.2d at 167.
¶ 16. Applying these factors to the case sub judice, we note that Simons possesses a high school diploma with no formal job training of any kind. She is unable to return to the job she was performing at the time she was injured. The record is conflicting as to the exact number of businesses at which Simons applied for employment, but it is safe to say that she diligently sought employment. The only job she was offered was at a fast food restaurant working part time. Simons testified that she had to leave this job after only five days due to severe pain and numbness in her hands and wrists. She testified that she continues to experience severe pain due to her injuries. In fact, Dr. Tubb testified that Simons suffered from chronic pain in both of her hands.
¶ 17. Also it is important to note that Simons was employed by Foamex as a cushion assembler for eighteen months. At each of the functional capacity evaluations, Simons indicated that she wanted to return to her job at Foamex as soon as possible. The work Simons did at Foamex was classed as unskilled light range labor as defined by the Dictionary of Occupational Titles. Her medical records and functional capacity evaluations reveal that she is now limited to employment in sedentary *1055 positions with weight restrictions and instructions to avoid actions that require repetitive use of her hands and arms.
¶ 18. In continuation of this line of law, the Court in Robinette v. Henry I. Siegal Co., 801 So.2d 739 (¶ 9) (Miss.Ct.App.2000), stated that "the award of increased benefits based on a higher industrial disability determination for a scheduled member may not be reduced by showing that there are other jobs, unrelated to the worker's present employment, for which the worker may be qualified." As such, Simons need only demonstrate that she is unable to perform the type of unskilled labor she was performing at Foamex. This fact is well supported by the evidence in this case.
¶ 19. As noted above, the Commission's order will be upheld unless there has been an error of law or the findings are against the overwhelming weight of the evidence. Smith, 607 So.2d at 1124. We find the Commission failed to properly apply the controlling case law. There was no dispute that Simons was unable to return to her job at Foamex. By application of the McGowan factors, this job should properly be considered her usual employment. As such, because Simons suffered the loss of use of a scheduled member which resulted in the inability to perform the substantial acts of her usual employment, she is entitled to compensation for total loss of use of the member. Richey, 361 So.2d at 998. Further, Simons's impairment affects two scheduled members. Under Miss.Code Ann. § 71-3-17(a) (Rev.2000) the "loss of both ... arms ... shall constitute permanent total disability." For the foregoing reasons, we hold that the judgment of the circuit court should be affirmed.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED AND REMANDED TO THE COMMISSION FOR FINDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS ARE ASSESSED TO THE APPELLANTS.
KING P.J., BRIDGES, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., AND THOMAS, J.
SOUTHWICK, P.J., concurring:
¶ 21. Workers' compensation, scheduled members, and the Court of Appeals. This has proven to be a difficult combination almost since this Court commenced in 1995. As one of those who has been attempting during that period first to understand and then to apply that understanding, my contribution may not always have been as useful as I would have liked. Perhaps this will be.
¶ 22. The majority has focused on whether Simons is no longer able to perform the substantial acts of her usual employment. As the Court rightly discusses, that involves determining both what her usual employment was and then defining its substantial acts. It is not simply a matter of noting the precise work activity or even the precise employer that existed at the time of the injury. To be as pointed as I can be, the question of total loss of use is not answered by determining whether the claimant can still perform X task for Y employer if performing X for Y was what she was doing at the time of injury. It is a broader collection of considerations.
¶ 23. The majority opinion largely takes this approach. It quotes Justice Sullivan who for the Supreme Court discussed a variety of factors that should be considered. McGowan v. Orleans Furn., Inc., 586 So.2d 163, 167 (Miss.1991). By looking at work history and job skills, the Commission first and then a court in review may *1056 determine what this worker's usual employment fairly should be considered as being, together with the attendant customary acts. The basic approach is that if a claimant can no longer do what she has customarily done in the workplace because of an injury to a scheduled member, she is entitled to benefits for the total loss of use of that member.
¶ 24. It is possible that the Supreme Court will in due course disagree with this analysis that has usually but not exclusively been followed by this Court. Cf. Meridian Prof'l Baseball Club v. Jensen, 1999-WC-02093-COA (Miss.Ct.App. Oct. 10, 2000), cert. granted March 29, 2001, with Weatherspoon v. Croft Metals, Inc., 2000-WC-01411-COA, ___ So.2d ___, 2002 WL 85798 (Miss.Ct.App. Jan. 22, 2002). The State's pre-eminent academic authority on the subject has agreed that substantial acts of usual employment is more nuanced, than just awarding benefits for total loss of use because the worker can no longer do what she was doing on the day of the injury for that employer. John Robin Bradley, "Scheduled-Member Benefits for Total Loss of Use: Definition of `Usual Employment,'" at 8 & 16-17, in TWELFTH ANNUAL WORKERS' COMPENSATION PRACTICE & PROCEDURE SEMINAR (1999).
¶ 25. Further, another precedent quoted by the majority could be read to say more than intended:
the award of increased benefits based on a higher industrial disability determination for a scheduled member may not be reduced by showing that there are other jobs, unrelated to the worker's present employment, for which the worker might be qualified.
Robinette v. Henry I. Siegal Co., 801 So.2d 739, 744 (Miss.Ct.App.2000). I agree that a claimant's general ability to find work is not the controlling issue when total loss of use of a scheduled member is the question. When the Court stated that the other jobs are irrelevant when they are "unrelated to the worker's present employment," I would interpret that in light of the "usual employment" analysis that the majority describes and which I have endorsed here.
¶ 26. I concur in affirming the circuit court and Commission.
McMILLIN, C.J., AND THOMAS, J., JOIN THIS SEPARATE WRITTEN OPINION.